# The Chicago, Burlington and Quincy Railroad Company

*v.*

# Samuel Triplett, Administrator.

1. Negligence—*what constitutes.* Where a railway train is made up of platform cars, which are being driven before the locomotive towards the crossing of a highway, the approach being through a cut, so that persons approaching the crossing on the highway would be unable to discover the character of the train until it emerged from the cut at the crossing, it is incumbent on those in charge of the train to use every possible precaution in order to avoid collisions, both by running at a low rate of speed and by a continuous sounding of the bell or whistle for the eighty rods required by the law.

2.  And in an action for injury resulting from a collision at such a crossing, the fact that the signal was not continuously given in the manner required by the statute, is to be considered in connection with the peculiar mode in which the train was made up, the high rate of speed at which it was running, the dangerous character of the crossing, and the fact that the engineer saw the vehicle in which the person injured was riding, approaching on the highway at the time the signal should have been given.

3.  Where a train of the character indicated came in collision with the vehicle at such a crossing, resulting in the death of the passenger, it appearing that the engineer saw the vehicle approaching at the time he should have given the signal, but neglecting to do so, except by a single blast of the whistle, and not attempting to check the speed of the train until he whistled down the breaks at the moment of the collision, this was held to be, not merely negligence, but a criminal recklessness of human life, for which the guilty parties might well have been held to answer on the criminal side of the court.

4.  Nor did the fact that the party killed by the collision was partially deaf, excuse the continuous sounding of. the whistle or ringing of the bell from the point required by the statute. He was at least entitled to such warning of the approach of danger as the law designs to give to those having full possession of their faculties. It should not be inferred that because a person laboring under such an infirmity might not hear the signal from the most remote point he would be unable to hear it at a nearer point.

5.  NEGLIGENCE—*of comparative negligence.*  A person in crossing a railroad in a vehicle is guilty of a certain degree of negligence, if he does not ascertain by the eye whether a train is approaching, though the proper signal be not continuously sounded, but in this case the negligence in that regard on the part of the plaintiff's intestate was slight in comparison with the reckless carelessness of those in charge of the train, and should not, therefore, bar a recovery.

6.  The rule is, that although the plaintiff in an action against a railroad company for injury from alleged negligence of the defendant, may have himself been guilty of some degree of negligence, yet if it be but slight in comparison with that of the defendant, it should be no bar to his recovery.

7.  No inflexible rule, however, can be laid down. Each case must depend on its own circumstances, and the question of comparative negligence must be left to the jury, under the supervision of the court.

8.  EVIDENCE—*of affirmative and negative testimony.*  In an action against a railroad company by the administrator of one who was killed by a collision of his buggy with a train upon the railroad, while crossing the same upon a highway, the engineer and fireman testified to repeated soundings of the whistle upon the locomotive on approaching the crossing, while four

other witnesses, who were near the train, testified that there was only a single blast upon the whistle. .It was *held*, the jury were justified in giving more weight to the testimony of these witnesses than to that of the engineer and fireman, not merely because of their greater number, but for the reason, so far as appeared, they were free from all bias, while a very heavy moral responsibility attached to the adverse witnesses, from the burden of which they had the strongest inducements to relieve themselves, if possible, by their own testimony. See also *Chicago, Burlington and Quincy R. R. Co.* v. *Cauffman*, Ante, 427.

APPEAL from the Circuit Court of Kendall County; the Hon. MADISON E. HOLLISTER, Judge, presiding.

The case is sufficiently stated in the opinion of the Court.

Messrs. WALKER and DEXTER, for the appellant.

Mr. J. I. TAYLOR, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an action brought by Triplett on the following state of facts: The Chicago, Burlington and Quincy Railroad, and a public highway between the towns of Princeton and Dover, in Bureau county, cross each other on the same level, the smaller angle of intersection being about twenty-two degrees. To the eastward of the crossing both the highway and the railroad pass through a cut about two hundred and fifty feet in length on the former, and about six hundred on the latter. Between the two roads there is a bank of earth extending about thirty feet, with a hedge, which was in leaf at the time of the accident, extending about three hundred feet. These obstruct the view from one road to the other.

On the 16th of November, 1861, about three-quarters of an hour before sun-set, Wells, whose administrator is the appellee herein, was approaching the crossing above described, in a covered buggy, upon the highway. At the same time there

was approaching, upon the railway, a train of flat cars, variously stated by the witnesses at from eleven to fourteen in number, and not drawn by the locomotive, but driven before it. A collision occurred at the crossing, and Wells was instantly killed. His administrator brought suit, and recovered a verdict for one thousand dollars. There was judgment on the verdict, and the railway company has brought the record to this court.

All the instructions asked by the appellant upon the trial were given. Its counsel take no exception in their printed argument to any of those given for the appellee. No ruling of the court below is alleged as error, except the refusal to grant a new trial, and we are asked to reverse the judgment on the sole ground that the verdict is unsustained by the evidence.

If we could discover in this record any reason for supposing that the verdict had been dictated by the not uncommon prejudice against railway corporations, we should have no hesitation in setting it aside. But after a careful consideration of the case, we find no indication of this. On the contrary, we deem it fully sustained by the evidence.

It is the settled law of this court, and a similar rule has been adopted in several other States, that although the plaintiff, in actions of this character, may have himself been guilty of some degree of negligence, yet if it be but slight in comparison with that of the defendant, it should be no bar to his recovery. Let us consider then the comparative degrees of negligence with which the parties to this record are respectively chargeable.

It is not claimed by the counsel for the appellant, that the engine bell was rung at all, and it is admitted by them that the whistle was not blown continuously from the whistling post, distant eighty rods, to the crossing, as required by the statute. For what length of space or time the engine-driver failed to give the necessary signal, is a point about which the witnesses differ. The engine-driver and fireman make the period of omission very brief, while four witnesses for the appellee

testify, that there was but a single blast of the whistle while the train was passing the whistling post, and no further signal, until the engine-driver whistled down the brakes, a moment before the collision occurred. If the jury gave more weight to the evidence of these witnesses than to that of the engine-driver and fireman, as they doubtless did, they were clearly justified in so doing, not merely because of their greater number, but for the obvious reason that so far as appears, they are free from all bias, while a very heavy moral responsibility attaches to the adverse witnesses, from the burden of which they have the strongest inducement to relieve themselves, if possible, by their own testimony. In cases of conflict of testimony this is a consideration perfectly proper to be taken into account.

This admitted fact, that the signal was not continuously given, in the manner required by the statute, is to be considered in connection with the peculiar mode in which the train was made up, the speed, greatly surpassing that allowed to such trains by the rules of the road, at which the preponderance of testimony shows this one to have been running, the dangerous character of the crossing, requiring from the persons in charge of the train more than ordinary care, and the fact that the engineer, as appears by his own testimony, saw the buggy approaching on the highway at the very time when the signal should have been given.

The locomotive, as already stated, was pushing before it a long train of platform cars. We presume this reversed position of the locomotive is often inevitable with construction trains, but the greatly increased danger to the traveler, at highway crossings, is palpable at a glance. Such crossings are frequently approached through cuts, as in the present instance, and the traveler on the public road, seeing the locomotive or its smoke, and unable to see the cars, would take it for granted that they were, as usual, behind the engine, and would only learn his fatal error, as, emerging from the cut, he finds the train already upon him, though the locomotive may still be

distant.    In the case at bar, if the platform cars had not preceded the engine, the evidence shows the deceased would have escaped.    Now, with a train so made up as to lead the most cautious persons into danger, it is clearly incumbent on the persons in charge to use every possible precaution, in order to avoid collisions at highway crossings, both by running at a low rate of speed and by a continuous sounding of the bell or whistle for the eighty rods required by the law.    Both these ordinary precautions, required, the one by a rule of the road, and the other by a law of the State, and so indispensable under the circumstances of this case, were neglected, and this, though the engineer saw travelers approaching the crossing upon the public road.    This was not merely negligence, it was a criminal recklessness of human life, for which the guilty parties might well have been held to answer on the criminal side of the court.

But it is urged by the appellant that the failure to sound the whistle, as required by law, does not make the company liable, because such failure did not cause the accident.    There is evidence in the record that the deceased was somewhat hard of hearing, although several witnesses testify he could understand conversations conducted in an ordinary tone of voice, and one of his acquaintances, who had often talked with him, had never discovered the alleged defect.    But in view of this testimony, and of the clearly proven fact that the whistle was sounded with at least a single blast, as the train reached the whistling post, it is urged that it would have been useless to sound it further, since the failure of the deceased to be warned by the single blast, shows that he was either too deaf to have heard a continuous signal, or too reckless to have regarded it, if heard.    We can not adopt this reasoning.    On the contrary, we hold, that whether Wells' infirmity of hearing was greater or less, there is no pretense, in the evidence, that he was incapable of hearing at all, and because he did not hear a whistle at the distance of eighty rods, it is hardly to be inferred that he would not have heard it at a distance of ten or twenty.

The Legislature have very wisely required that the whistle shall be continuously sounded, or the bell rung, for the distance of eighty rods before reaching the crossing ; it has imposed a penalty for non-compliance, and it can not be permitted to railways to excuse themselves from disobedience, by assuming that a failure to hear or regard the whistle, when sounded at the most remote point, is conclusive evidence that the passer by would be unable to hear it at a nearer point, or that he would disregard it, and devote himself to voluntary destruction. The deceased may have been partially deaf, but he was at least entitled to such warning of the approach of danger as the law designs to give those in full possession of their faculties, and to enjoy such chances as his infirmity left him of hearing, and being saved by the warning.

But the counsel for the appellant further urge that the deceased was, himself, guilty of such a degree of negligence as to bar his recovery, because he did not ascertain, by the eye, before his horse was upon the rails, that a train was at hand. Undoubtedly prudence requires that all persons, before they attempt a crossing, should examine the road to ascertain if a train is approaching. In the case before us, however, the vigilance of the deceased was probably lulled to sleep by the fact that he had not heard the signal which the law required from the coming train. Besides, the intervening obstacles and the covered buggy interposed unusual difficulties to an examination of the track. We consider the deceased as guilty of a certain degree of negligence, but of a degree slight in comparison with the reckless carelessness of the persons having the train in charge. His carelessness may have been induced by the presumption that these persons would do their duty.

The counsel for the appellant, in their argument, have cited a number of cases decided by the courts of the State of New York, in many respects similar to the one at bar, in which it has been held that the plaintiff can not recover. Their reasoning is briefly this : If the plaintiff in any case has, by his

own negligence, contributed to the injury, he can not recover. But by a sufficiently careful examination, the traveler can always ascertain whether or not a train is approaching, before venturing upon a crossing. The very fact of collision is, therefore, evidence that he has not made such an examination as prudence requires, and such negligence should ordinarily prevent a recovery. It is plain such reasoning would give a practical immunity to railways, against damages to the highway traveler, in almost any conceivable case of collision, without reference to the negligence of the persons in charge of the train, and in doing this, would fritter away a salutary statute which imposes upon railways no unreasonable burden. This we are not disposed to do. As railway trains are permitted to cross highways upon the same level, and as they crush whatever they encounter, the Legislature has thought proper to require from them a signal of their approach so prolonged as to give the traveler full warning of their coming. The law was enacted for the public security, and we do not conceive that railways should be permitted to excuse themselves for willfully disobeying it, by the argument that travelers upon the public roads can inform themselves, by other means, of a coming train.

No inflexible rule, however, can be laid down. Each case must depend on its own circumstances, and the question of comparative negligence must be left to the jury under the supervision of the court. If they return a verdict against the railway based upon such evidence as we find in this record, it is not the province of the court to set it aside.

*Judgment affirmed.*