entitled the mover to a different judgment upon his motion.

Let the order of the Circuit Court be affirmed.

STONE, J. not sitting, having been of counsel.


# Grey's Ex'r *v.* Mobile Trade Company.

*Action against Common Carrier for Loss of Goods.*

55    387
97    239
97    518
55    387
100   668
102   201
55    387
d116  332
55    387
e141  279
55    387
h143  369
143   370

1. *Sufficiency of plea in bar, negativing fault and negligence.*—In an action against a common carrier for the non-delivery of goods, a plea in bar, averring that the steamboat, on which the goods were shipped, "was accidentally destroyed by fire, without the fault or negligence of this defendant," sufficiently negatives negligence on the part of the defendant's agents and servants.

2. *To what witness may testify.*—A witness, testifying as to the destruction of a steamboat and her cargo by fire, may state that "all the cotton under the boiler-deck was *protected* from the weather, and from sparks;" when the context shows that the word *protected* was used as the synonym of covered, the expression is not the statement of an opinion or inference.

3. *Deposition; motion to suppress answer as not responsive.*—A motion to suppress a part of a deposition, because it is not responsive to the interrogatories, cannot be made for the first time when the deposition is offered on the trial.

4. *Marine protest; admissibility as evidence.*—A protest, made by the officers and passengers of a steamboat destroyed by fire on an inland river, whatever may be the rule in admiralty cases as to its admissibility, is not competent evidence for the owners of the vessel, when sued for the loss of freight.

5. *Common carrier; liability for negligence, under special contract, or exception in bill of lading.*—Public policy forbids that a common carrier shall be allowed to contract for immunity from the consequences of his own negligence, and an exception in a bill of lading will not be construed to have that effect; but, in the absence of all fraud or negligence on his part, he may lawfully contract for exemption from the extreme measure of liability imposed on him by the common law.

6. *Same; burden of proof as to diligence or negligence.*—Where a bill of lading for the transportation of cotton on a steamboat contained an exception of "the dangers of the river and fire," and the boat and cargo were destroyed by fire,—*held*, in an action against the carrier for the loss of the goods, that, to bring himself within the exception, he must make at least a *prima facie* showing that the injury was not caused by his negligence.

7. *Same; what measure of diligence required.*—In determining the degree of diligence required of a common carrier, regard must be had to the nature of the goods, and the perils attending the particular mode of transportation employed  Where a cargo of cotton, or other article highly inflammable or ignitible, is transported on a steamboat on an inland river, under a bill of lading which excepts "dangers of the river and fire," the carrier, to excuse himself for a loss by fire within the exception, must show that he employed that degree of diligence which very careful and prudent men take of their own affairs.

8. *Same; same.*—The failure of a steamboat, carrying passengers and freight on an inland river, to have the cotton on its decks "protected by a complete and suitable covering of canvass, or other suitable material to prevent ignition from sparks," as required, under a penalty of one hundred dollars, by

the act of congress approved July 25, 1866, entitled "An act further to provide for the safety of the lives of passengers on board of vessels propelled in whole or in part by steam," &c. (14 U. S. Stat. at large, 227), is a want of that extraordinary care and diligence which the law requires in such case, and renders the carrier liable for a loss by fire, although the bill of lading excepts "dangers of the river and fire."

9. *Repeal of statute; effect on existing causes of action.*—When a statute prohibits an act under a penalty, and a violation of its provisions is such an act of negligence as, on common-law principles, subjects the offender to a civil action for damages on account of a loss or injury thereby proximately caused, the repeal of the statute does not take away or impair a right of action which has already accrued by reason of such negligence.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. M. J. SAFFOLD.

This action was brought by Ben. Edwards Grey in his lifetime, against the Mobile Trade Company (a corporation chartered by the laws of Alabama), as a common carrier, to recover damages for the defendant's failure to deliver forty-eight bales of cotton, shipped by the plaintiff, at White's Bluff on the Alabama river, on the defendant's steamboat *Onward*, on the 16th November, 1867, consigned to John A. Winston & Co., factors and commission-merchants, at Mobile; and was commenced on the 10th June, 1868. The defendant pleaded the general issue, and two special pleas, which were in these words : " 2. For further plea, said defendant saith, that it was the owner of a steamboat called the *Onward*, at the time of the delivery of the plaintiff's cotton as alleged in the declaration; and said steamboat was then regularly engaged in the navigation of the Alabama river; and said cotton was received on said steamboat, by the master of said steamboat, to be shipped to the port of Mobile; and a bill of lading for said cotton was given to the plaintiff, by the defendant's agent, for the delivery of said cotton in Mobile in good order, the dangers of the river and fire excepted; and the defendant saith, that after said cotton was so received on board of said steamboat, and while she was proceeding in the due course of navigation on the Alabama river to the port of Mobile, and was so loaded with said cotton, said steamboat, and said cotton of plaintiff, were destroyed by fire, without the fault of this defendant, or of its agents in charge of said steamboat; and this said defendant is ready to verify," &c. " 3. And for further plea, said defendant saith, that the Mobile Trade Company was the owner of the steamboat *Onward*, on which the plaintiff's said cotton was shipped from the port of *Selma* to the port of Mobile; and said cotton, while the same was being conveyed on said steamboat in due course of navigation on said voyage, was accidentally destroyed by fire, without the fault or negligence of this defendant; and said steamboat was, when

said cotton was shipped on her, and when the same was so destroyed by fire, a vessel of the United States, owned by persons residing in the United States, and was duly enrolled and licensed as such under the laws of the United States, and was so enrolled and licensed for the coasting trade of the United States. Wherefore this defendant saith he is not liable," &c. The plaintiff took issue on the first and second pleas, and demurred to the third, "on the ground that the same does not negative negligence on the part of the defendant's agents and employes." The court overruled the demurrer, and the plaintiff then took issue on the third plea.

The bill of lading, which was read in evidence on the trial by the plaintiff, was in the usual form, and contained an exception of "dangers of the river and fire." The plaintiff proved the delivery of the cotton on board of the steamboat, and the failure to deliver it to the consignees at Mobile. The defendant then introduced as a witness C. H. Locklin, who was the clerk of the steamboat, and offered in evidence the depositions of P. F. Aunspaugh, the captain, and of several passengers who were on board at the time of the accident. These witnesses stated the condition of the boat and her cargo, and the facts and circumstances attending the fire. Their testimony showed that the cargo of the boat was about seven hundred bales of cotton, of which about one hundred and fifty or two hundred bales were stored on the forecastle, and covered with tarpaulin, while the remainder was stored in the hold and on the lower (or main) deck; that the cotton on the lower deck was stored in the usual way, in tiers along the guards, from the forecastle back towards the stern, and piled up to within a foot of the upper (or boiler) deck; that the cotton thus stored between the decks was not covered with tarpaulin, or any other kind of canvass, but the upper deck extended entirely over it, being "flush" with the guards of the lower deck. The fire occurred between three and four o'clock in the afternoon, and the boat and her cargo were entirely consumed in about three minutes, ten or twelve persons also being lost. The fire originated from a lighted match, or a taper, which was thrown over by one of the passengers, who had lighted his cigar or pipe with it, while smoking on the upper deck; or, as detailed by another witness, from the ashes of a pipe, which one of the passengers had knocked against the railing of the boat after smoking; and the taper or ashes, being blown under the deck, communicated the fire to the cotton. The defendant's evidence conduced to show that the boat had competent officers and a sufficient crew, and was properly supplied with engines, hose, and other necessary means of protection against

fire; but the fire spread with such rapidity that nothing could be done. Printed notices were posted on the boat, forbidding smoking on the decks; and the captain and clerk testified that, when they saw passengers smoking on the decks, they requested them to desist, or to retire to the cabin.

When the depositions of some of the defendant's witnesses were offered in evidence, the plaintiff objected to several portions, which were in these words: "The cotton stored between decks was protected from sparks and the weather by the boiler deck;" "All the cotton on the boiler decks was protected from the weather and sparks;" "Any cargo that might be stored on the *Onward*, between decks, was protected by the flush deck above." These, and other similar statements, were objected to by the plaintiff, on the ground that they were merely the expression of an opinion by the witness, or an inference from facts which the jury only could draw. The court overruled the objections, and the plaintiff excepted. The plaintiff also objected to the admission of a marine protest, made by a notary public in Mobile, containing the sworn statements and the declarations before him, of the officers and passengers of the steamboat, as to the origin of the fire, the efforts to extinguish it, and the condition and equipment of the boat; which was annexed to the deposition of Capt. Aunspaugh, and was offered in evidence by the defendant. The plaintiff objected to it, "on the ground that it was illegal, *ex parte*, and mere hearsay evidence." The court overruled the objections, and the plaintiff excepted. Other exceptions were reserved by the plaintiff to rulings of the court on questions of evidence, but they require no notice.

The court charged the jury as follows: "To entitle the plaintiff, *prima facie*, to a recovery, he must show to the jury, by credible proof, that the defendant, a body corporate and a common carrier, received in that capacity, and undertook for a reward to carry, forty-eight bales of ginned cotton to John A. Winston & Co., the agents and factors of plaintiff at Mobile, and that they failed to do so. Licensed and enrolled steamers, carrying cotton or other merchandise, on the rivers of the State, for the public, for a reward, are common carriers, and governed by the laws regulating the liability of common carriers generally. The general rule of the common law, regulating the liability of common carriers, is, that he is an insurer against all damage, loss, or destruction of goods intrusted to him to carry for a reward, with these two exceptions: that if the damage is caused by the act of God, or of the country's enemy, the general rule does not apply. Formerly, these two were the only exceptions in favor of the

carrier's immunity from the general rule, which made him an insurer. Under the general rule, subject to these two exceptions, it was only necessary for the plaintiff, in an action against a common carrier, to prove that he received the goods to carry, for a reward, and that he failed to carry them. This threw upon the carrier the burden of proving that he came within the exception—that the goods were damaged, or destroyed, by lightning, or tempest, or some other such act of God, or by the country's enemies. If this proof, as it usually did from the nature of the case, repelled the inference of fault or negligence of the carrier, then the *prima facie* case of the plaintiff failed, unless he could go forward, and show that, notwithstanding the loss or damage was caused by flood, storm, lightning, or the public enemy, yet such loss would not have occurred, if due care and diligence had been used by the carrier. What is the due care and diligence, which the common law required the carrier to use, to exempt himself from loss caused by the act of God or the public enemy? In this case, when the common-law exception is invoked, I apprehend the rule is, that the carrier shall use every care, diligence, and vigilance, which an extraordinarily careful man would take, under all the circumstances, by using all the means which human foresight could reasonably be expected to use; but, when the loss was traced by the defendant, clearly, under the shadow of the common-law exception, and to causes beyond the reach of human care and foresight, reasonably applied, to have prevented it, the carrier was exempted. More recently, the law has allowed other exceptions to be provided, by special contract, for the carrier's exemption. One of these causes of loss or damage, thus allowed to operate a qualified exemption in favor of the carrier, is loss by fire. The contract is not allowed to operate a complete immunity from liability, in cases of loss by fire, without regard to the circumstances under which the fire occurred. Public policy forbids this. The carrier can not set the cargo on fire, and claim exemption under his special contract; nor can he suffer the burning by his negligence, or want of due care. But the special contract receives a reasonable construction, and this construction holds the carrier to good faith, and the exercise of proper foresight and diligence—'due care,' as the books term it—in carrying the goods. But, what degree of care is *due* care? What foresight and diligence are *proper* foresight and diligence, which will exempt the carrier? If we hold that the exemption specially stipulated for can not be allowed the defendant, unless it appears from the evidence that no exercise of human foresight could have prevented the fire—that the

cause of the fire was beyond the reach of such exercise of human foresight, care, and diligence, the matter suggests itself, where will the line be found, between causes which are beyond the reach of human prevention, and those which are not? Until these later exceptions in favor of the carrier were allowed, *no* degree of human foresight could exempt him from liability, where the loss could be traced to human agency, as contradistinguished from causes such as lightning, sudden storms, &c. Against all such losses the carrier was an insurer—that is, he was bound to carry the goods safely, or account for them. These later exceptions, undoubtedly, had their origin in, and received their encouragement from changes, which have transpired through the operations of time, in the carrier's relations towards the public. The spirit which prompted the relaxation of the rule, and the impracticability of ascertaining the marginal line, if any exists, between causes beyond human care and those within human care and foresight, as well as the exactitude of science, require that a definite rule shall be established, by which the degree of care and diligence is fixed; and that rule should be a practicable one. The decisions of the State courts are evidently uncertain and indefinite, as to the degree of care required; so much so, that this court feels justified in assuming this to be an open question. While some of the decisions of our Supreme Court seem to indicate a design to require extraordinary care, and to visit damages on the carrier for slight negligence, and to allow him to cover by special contract only an undefined margin of causes, lying beyond the reach of human foresight, and within the domain of an insurer, still short of the act of God and the public enemy; yet these cases furnish sufficient reasons for this court to hold itself not bound by these intimations. The Supreme Court of the United States seems to furnish a more sensible and practicable rule. It gives the special contract the effect of changing the relation of the common carrier, so far as the other contracting party is concerned, into that of a private carrier, while his capacity towards the public otherwise remains the same. It makes the carrier a private carrier as to this individual, and fixes the degree of care and diligence required of him at ordinary care—such care, that is, as an ordinary prudent man, under all the circumstances surrounding the loss, would have taken of his own goods. This rule, I think, is the most satisfactory, both by reason of its certainty and definiteness, and its adaptation to the purposes of the law in allowing the exceptions. But, because these are exceptions to the general rule of a carrier's liability, and not an original liability of a private bailee, and

because the original character of the carrier is that of a common carrier, he must show that the loss was caused by the fire, and that the fire was caused despite this degree of care, in order to meet the plaintiff's *prima facie* case, showing the receipt of the goods and the failure to deliver them. The liability of the carrier in this case, if he brings himself within an exception by special contract, which may be made through a bill of lading accepted by the owner of the goods shipped, is because of the want of this due care and diligence required by the law; and this want of due care and diligence must appear by proof to the jury. The act of congress, approved July 25, 1866, cited by counsel, affixing a penalty to a failure to cover cotton with fire-proof material, neither adds to, nor diminishes the liability of the carrier, and does not change the rule of evidence. A failure to comply with the act may be such negligence as would render the defendant liable to the plaintiff—the jury are the sole judges of this; but, if so, it is not because of the violation of the act, or because the act makes it unlawful, but because the failure, without the act, is such want of care as the law condemns. The act of congress, 9th section, cited by defendant's counsel, does not extend the protection of the act of 1850, in favor of owners of vessels, to the owners of steamboats navigating the Alabama river."

The plaintiff excepted to this charge, "and to each paragraph thereof," and requested the court, in writing, to charge the jury—

"1. If the jury believe the evidence in the cause, they should find a verdict for the plaintiff, unless it is shown to their satisfaction that the accident could not have been prevented by the exercise of proper foresight, vigilance, and diligence.

"2. If the jury believe the evidence in the cause, and if they believe that the exercise of proper foresight, vigilance, and diligence, by covering the sides or ends of the cotton with tarpaulins, or other proper material, could have prevented the cotton from taking fire from the causes stated by the defendant's witnesses; and if the jury believe that the fire happened from those causes, or either of them,—then they should find a verdict for the plaintiff.

"3. If the jury believe the evidence in the cause, then the ends of the cotton which was under the boiler deck, and forward of the cabin and offices, should have been protected by a complete and suitable covering of canvass, or other proper material, so as to prevent ignition from sparks; and if the fire happened because the cotton was not thus covered, then the plaintiff is entitled to recover.

"4. If the jury believe the evidence in the cause, and believe that no other means were used to prevent passengers from smoking on the boiler deck, in front of the cabin, than simply to stick up a notice in front of the boat; and if such smoking was carried on by the passengers, from immediately after dinner until the fire occurred; and if it was dangerous to the cotton to carry on such smoking in the manner described by the witnesses; and if the fire happened in consequence of this smoking, in the manner stated by the defendant's witnesses,—then the jury should find a verdict for the plaintiff."

The court gave the first one of these charges, but with the qualification, "that it was given in connection with the main charge," and refused the others; to which refusal, as well as to the qualification of the first charge given, the plaintiff excepted.

The overruling of the demurrer to the third plea, the several rulings on questions of evidence to which exceptions were reserved, the charges given, and the refusal of the several charges asked, are now assigned as error. The appellant having died while the appeal was pending, the cause was revived in this court in favor of his personal representative.

BROOKS, HARALSON & ROY, for appellant.—1. The demurrer to the third plea was well taken, and should have been sustained. If that plea had negatived negligence generally, it might have been sufficient; but it was expressly limited to the negligence of the *owners*, thereby excluding the negligence of their agents and servants.—Story on Agency, §§ 451, 454.

2. The statements of the several witnesses to which objections were made by the plaintiff, as being mere opinions, or inferences, fall within the principles decided in *Otis & Jayne v. Thom*, 23 Ala. 469; *Gibson v. Hatchett & Brother*, 24 Ala. 201; *M. & W. P. Railroad Co. v. Edmonds*, 41 Ala. 668.

3. The "marine protest," as it is called, was not competent evidence. As against the plaintiff in this action, it was *ex parte* declarations, and mere hearsay.—Abbott on Shipping, 466; 2 Kent's Com. 213, note; 2 Conk. U. S. Admiralty, 343, 345, and note on page 32; 2 Hag. Adm. 151; 3 Hag. Adm. 321.

4. As to the exception contained in the bill of lading, the charge of the court asserted, in substance, that its effect was to make the defendant a private carrier, or ordinary bailee for hire, and liable only for ordinary care and diligence. Whatever conflict there may be in the decisions of other courts on this question, the doctrine is settled in this court,

[Grey's Ex'r v. Mobile Trade Company.]

by repeated decisions, that the only effect of such an exception is to change the liability of the carrier as an insurer, to the extent of the limitation—that he is still a common carrier, and must exercise the care, skill and diligence required of such carrier; and that the *onus* is on him, not only to show that the loss was within the exception, but also that there was no negligence on his part.—*Steele & Burgess v. Townsend*, 37 Ala. 247; *M. & O. Railroad Co. v. Jarboe*, 41 Ala. 648; *M. & O. Railroad Co. v. Hopkins*, 41 Ala. 486. These decisions were made by able judges, and were well considered; and they are sustained by numerous text-writers, and decisions of other courts.—Redfield on Carriers, § 165; Story on Bailments, §§ 601, 601 *a*; 2 Greenl. Ev. § 219; *Swindler v. Hilliard*, 2 Rich. L. 286; *Baker v. Bronson*, 9 Rich. L. 201; *Davidson v. Graham*, 2 Ohio St. 131; *Graham v. Davis*, 4 Ohio St. 362; *Davis v. Garrett*, 6 Bing. 716; *Williams v. Grant*, 1 Conn. 487; *Neal v. Saunderson*, 2 Sm. & Mar. 572; Angell on Carriers, §§ 175, 181.

5. The act of congress approved July 25, 1866, was passed in the exercise of the undoubted jurisdiction conferred by the constitution, and was designed for the security and protection of both life and property. The defendant's failure to comply with its requisitions resulted, directly and immediately, in the loss of ten or twelve lives, and seven hundred bales of cotton. If no penalty had been affixed to a violation of the statute, it would have been equally obligatory; and attaching a specific penalty to a violation of its provisions, does not relieve from other liabilities arising from its violation. It is the duty of every person to comply with the law. A violation of it is gross negligence, irrespective of the penalty. Every person who violates an express statute is a wrongdoer, and as such is, *ex necessitate*, negligent in the eye of the law.—Angell on Carriers, 202, note; *Dale v. Hall*, 1 Wils. 281; *Jetter v. N. Y. & H. Railroad Co.*, 41 *N .Y. (2 Keyes) 154; *Langhoff v. Milwaukee Railroad Co.*, 19 Wisconsin, 489; *N. J. Steam Nav. Co. v. Merchants' Bank*, 6 Howard, 385; *Caldwell v. N. J. Steam Nav. Co.*, 47 N. Y. 282; *Waring v. Clarke*, 5 Howard, 441; Shearman & Redfield on Negligence, §§ 13*a*, 484.

6. The master of the boat had full power to prevent smoking, or anything else that was dangerous to the safety of the passengers and cargo; and it was his duty to have exercised the power which the law gave him. The fact that notice against smoking was posted on the boat, only shows that the master knew his power and duty, and makes his neglect more pointed.—Angell on Carriers, §§ 621, 623; 3 Kent's Com. m. p. 183; Abbott on Shipping, 211, and notes; 1 Camp. N. P.

58; 8 Car. & P. 454; 3 Mason, 242; 6 Howard, 246.

P. HAMILTON, and PETTUS & DAWSON, *contra.*—The third plea was sufficient, since the negligence of the agent, or servant, is the negligence of his principal.—Story on Agency, § 452; Angell on Carriers, 59.

2. In this State, from a very early day, fire has been recognized as one of the "dangers of the river."—*Sampson v. Gazzam,* 6 Porter, 123; *Ezell v. Miller,* 6 Porter, 307; *Ezell v. English,* 6 Porter, 311; *Hibler v. McCartney,* 31 Ala. 501. But the bill of lading in this case goes further, and expressly excepts fire from the carrier's risks; and the bill of lading, containing that exception, is a valid form of effecting that limitation of the carrier's liability.—*Steele & Burgess v. Townsend,* 37 Ala. 247, 251. The loss happened by fire, one of the excepted dangers; and the liability of the carrier is thereby discharged, unless it is shown that the fire was designedly caused by the carrier, or occurred by the negligence of the carrier or his servants.—31 Ala. 501, *supra.*

3. No question of design arising on the facts, the case is narrowed down to a question of negligence; and that question was properly presented to the jury by the charges of the court. According to all the authorities, when a common carrier receives goods for transportation under a special contract limiting his liability, he becomes, *quoad hoc,* a private carrier for hire, and is bound only to the exercise of ordinary care and diligence.—Angell on Carriers, §§ 54, 225, 268; 8 Mees. & Wels. 461; 2 Queen's Bench, 646; 6 Howard, 344; *N. Y. Central Railroad Co. v. Lockwood,* 17 Wallace, 357. That this is the recognized doctrine of this court, see *Hibler v. McCartney,* 31 Ala. 502, 508; 37 Ala. 252.

4. The act of congress of 1866, by which the plaintiff sought to determine the question of negligence *vel non,* was in fact complied with. All the cotton on deck was covered with canvass, or tarpaulin; and all the other cotton was between decks, and protected completely by the upper deck: no part of it was exposed, or carried on any open or uncovered guards of the boat. If an additional covering was necessary, under said act of congress, for the cotton between decks, it was equally necessary for the cotton in the hold. Nor did the fire originate from sparks, against which the act of congress intended to require ample protection. The act of congress, moreover, was only intended to protect the lives of passengers; and while it may create a duty on the part of the boat towards passengers, it has no application to freight, or its owners. As to passengers, the law imposes on the carrier a higher duty than is required as to goods under

such a special contract as is here shown.—13 Peters, 191; An-gell on Carriers, 568. As to passengers, this act of congress imposed additional precautions on the carrier; but it im-poses no additional duty or precaution, so far as property is concerned. Again, the requirements of the act of congress are to be enforced by a penalty; and that penalty is incurred by an offender, whether damage ensue or not. But the act gives no remedy to a private person, for any consequential damage; and in the absence of such express statutory pro-vision, the act of congress does not affect the question of neg-ligence.—22 N. Y. 191; 4 Keyes, N. Y. 330; 21 Barbour, 68; 8 Excheq. 283; 21 Howard, 548; 47 N. Y. 176; 49 N. Y. 379; 51 N. Y. 369.

5. But the said act of congress has no bearing whatever on the case, since it was repealed in 1871; which repeal is a declaration of the law-making power that the act was wrong in principle, or at least unnecessary; consequently, a disre-gard of its provisions, even in a case which fell within its express provisions, could not be negligence *per se.* The repeal of the act makes it as if it had never existed. If a suit were pending for a penalty under it, the repeal of the statute would bar a recovery.—1 Hill, 324. No higher right can belong to a party who seeks to recover damages for its breach in another form of action. So far as this action is founded on the statute, it falls with the repealed statute, as an action to recover the prescribed penalty would.—7 Wal-lace, 506; 4 Metc. 76; Sedgw. Stat. 51; 26 Barbour, 23; 35 Barbour, 599; 46 Ala. 603.

STONE, J.—We think the averment, in the third plea, that the cotton was lost "without the fault or negligence of de-fendant," was intended to embrace, and does embrace, all the agencies and appliances employed in the transportation, and negatives fault or negligence as to each. The Circuit Court, in its charge, placed this construction upon it. *Qui facit per alium, facit per se.* Negligence of the employes of the corporation, in navigating the boat, is, in law, negligence of the corporation. The doctrine of *respondeat superior* ap-plies in all its force; and, under this principle, the corpora-tion is adjudged a guarantor of the river-worthiness of its boat, the completeness of its furnishings, and the skill, dili-gence, and numerical sufficiency of its officers and crew. The demurrer to the third plea was properly overruled.—Shear. & Redf. on Negligence, § 59.

2. We do not think the Circuit Court erred, in refusing to suppress certain portions of depositions, of which the follow-ing is a sample: "All the cotton under the boiler-deck was

*protected* from the weather, and from sparks." Both the language used, and the context, show the sense in which it was employed—namely, that the boiler and hurricane decks extended quite over the cotton. The word *protected* was used as the synonym of *covered*. We do not think the jury were, or could have been, misled by it. It was a mere statement of fact, wholly unlike the questions considered in *Otis v. Thom*, 23 Ala. 469; *Gibson v. Hatchett*, 24 Ala. 201; and *M. & W. P. Railroad Co. v. Edmonds*, 41 Ala. 667; which last were at most mere inferences of the witnesses.

3. The motion to suppress certain portions of the depositions, because not responsive to the interrogatories, being sprung for the first time on the trial, was rightly overruled. *McCreary v. Turk*, 29 Ala. 244.

4. In receiving in evidence what is called the *protest* made by the officers and passengers on the steamer *Onward*, the Circuit Court erred. Such protests pertain properly to admiralty courts, and to marine voyages, rather than to river transportation. They may be evidence against the master and owners of vessels, in proper cases. They are hearsay, *ex parte* statements, and can not be used as evidence against shippers. They are wanting in many essentials, not the least valuable of which is the right to be present and cross-examine. Abbott on Shipping, marg. p. 380, 381; 2 Conk. U. S. Admiralty, 338–9; 3 Greenl. Ev. §§ 436, 430 *et seq.*; 1 Best on Ev. § 103. See Celt, Taylor, 3 Hag. Adm, 321.

5. The bill of lading in this case excepts " the dangers of the river and fire " from the risks of the carrier. This, and similar exceptions, have been made the subject of much judicial discussion, and, as in most other much mooted questions, of great contrariety of decision. All agree that they furnish no excuse whatever for the non-observance of diligence on the part of the carrier; and that when such disaster occurs, it can not be credited to the dangers of the river or to fire, unless it occurred without fault or negligence of the carrier and his employes. Public policy forbids that common carriers shall contract for immunity from the consequences of their own negligence. Still, they may contract for exemption from the extreme measure of liability which the common law imposes, when no fraud or negligence is imputable to them.

6. But there are two questions, in this connection, on which the authorities are not in harmony. *First*, on whom rests the burden of proof that the carrier did or did not employ proper diligence? Each side of this question has a strong array of authorities. In the case of *Steele v. Townsend*, 37 Ala. 247, Justice R. W. WALKER considered and commented

on many of the authorities, and came to the conclusion, that the true rule lies between the two extremes. After referring to the authorities which declare, without limitation, that the *onus* is on the carrier to bring himself within the exception, he, in effect, declares that it is incumbent on him only to make a *prima facie* case of exculpation; and that, beyond this, it is, like any other disputed question of fact, to be determined by the jury, upon a proper consideration of the whole testimony. His language is, "The exception includes only such breakage as care and diligence could not prevent; and the injury is not within the exception, until it is shown that it occurred notwithstanding the exercise of such care and diligence. It is not strictly accurate to say, that the *onus* is on the carrier to show, not only that the cause of loss was within the exception, but also that he exercised due care. The correct view is, that the loss is not brought within the exception, unless it appears to have occurred without negligence on the part of the carrier; and as it is for the carrier to bring himself within the exception, he must make at least a *prima facie* showing that the injury was not caused by his neglect."

This case has been quoted with approbation in all our later decisions.—See *M. & O. Railroad Co. v. Hopkins*, 41 Ala. 486; *Same v. Jarboe, Ib.* 644; *S. & N. Railroad Co. v. Henlein*, 52 Ala. 696. In the last case cited, BRICKELL, C. J., says, "When a loss or injury happens, the *onus probandi* rests on the carrier to exempt himself from liability; for the law imposes on him the obligation of safety. The owner or shipper is bound to prove no more than that the goods were delivered to the carrier, and the failure to deliver them safely. These facts are *prima facie* evidence of negligence or misconduct." *Steele v. Townsend, supra,* is cited in support of this; and there was no intention to mar or qualify the principle above declared.

The law of this State, then, stands as follows: The shipper makes a *prima facie* case against the carrier, when he shows the goods were not delivered. This casts the *onus* on the carrier, to show that the loss occurred from a danger of the river, or from fire; and he must also prove a *prima facie* case of diligence on his part. This, of course, implies a river-worthy vessel, properly furnished and appointed, competent and sufficient officers and crew, and care and vigilance to prevent danger, and to avert it when impending. Any deficiency in the skill or watchfulness of the officers or crew, in the matter of their special function; in the apparatus to extinguish fire, or in its whereabouts or readiness for prompt present use, or in prompt and vigorous effort to extinguish

[Grey's Ex'r v. Mobile Trade Company.]

a fire when it originates, would fall short of proving a *prima facie* case of diligence. Beyond these two shifting stages, our decisions have declared no rule in the matter of the burden of proof. The opinion in *Steele v. Townsend* was delivered by an able and prudent judge, and we adhere to it, believing the principle to be sound.

7. What measure of diligence is required of a common carrier, to bring himself within the exception found in this bill of lading? Here, again, the authorities, not only are not in harmony, but there is a want of precision in the language in which the principle is often expressed. In *Steele v. Townsend, supra*, the expressions bearing on this question are, "that discretion and care which the law requires of common carriers;" * * "that due diligence and proper skill were used to avoid the accident;" * * "liability for losses by neglect, which is the liability of a bailee."

In *New Jersey Steam Navigation Company v. Merchants' Bank*, 6 How. U. S. 344, 384, Justice NELSON phrases it, "want of due care, or gross negligence." In Redfield on Carriers, § 371, it is said, "After the presumption of negligence has been established against a carrier of passengers, it can only be rebutted by showing that the accident was the result of circumstances against which human prudence could not have guarded. By this we are to understand such prudence as one might have taken before the occurrence, and not that which afterwards it may be apparent would have been proper." This, it will be observed, relates to passengers, and not to freight.

In 2 Greenl. Ev. § 219, speaking of goods received under a special acceptance, and the cause of loss claimed to be within the exception, the author says, the carrier must show, "not only that the cause of the loss was within the terms of the exception, but, also, that there was on his part no negligence, or want of due care."

In *Wylde v. Pickford*, 8 Mees. & Wels. 443, 461, Baron PARKE, speaking of the liability we are considering, said, the carrier is "bound to use ordinary care in the custody of the goods, and their conveyance to, and delivery at their place of destination, and in providing proper vehicles for their carriage"—See, also, *Sager v. Portsmouth S. & P. & E. R. R. Co.*, 31 Maine, 228. We might continue these extracts almost indefinitely, and, in almost every case, in varying phraseology.

The measure of diligence required of bailees, or other persons to whom the goods of others are confided, is not always the same. The nature of the goods, whether easily destructible or not, and the perils attending the proposed mode of

transportation, should be taken into the account. What would be diligence of a high order in the handling of some articles of commerce, would be gross negligence in the handling of others. Steam, as a motor, on the great highways of commerce, has well-nigh supplanted all other agencies. The perils attending its use, when not directed with vigilance and educated skill, are scarcely exceeded by the great benefits that have resulted from its employment. An ignorant or reckless tampering with its immense capabilities is a crime against life and property, which can scarcely be too loudly condemned, or too severely punished. It savors of that universal malice, spoken of in the books. And when, as in this case, there is not only immense hazard in the unskillful or negligent handling of the instrument of transportation, but the peril is greatly increased by the highly combustible quality of the commodity which constituted the bulk of the cargo, a higher diligence and stricter vigilance are required of those in charge. " The bailee ought to proportion his care to the injury or loss which is likely to be sustained by any improvidence on his part."—Story on Bailments, § 15; *Ib.* § 62. See, also, *Steamboat New World v. King*, 16 How. 469, which was, like this, the case of a river steamboat; Shear. & Redf. Neg. §§ 7, 11, 19, 23.

In *Davidson v. Graham*, 2 Ohio State, 131, it is said : "The common carrier has the right to restrict his common-law liability by special contract; and this extends to all losses not arising from his own neglect, or omission of duty. He cannot, however, protect himself by contract from losses occasioned by his own fault. He exercises a public employment, and diligence and good faith in the discharge of his duties are essential to the public interests. He is held to extraordinary diligence—that is, that degree of diligence which very careful and prudent men take of their own affairs; and he is responsible for all losses arising from a neglect of that high degree of diligence enjoined on him by his public employment."

In the case of *Baker v. Brinson*, 9 Rich. Law, 201, speaking of an exception in the bill of lading, the court said, " It is only necessary to bear in mind that the character of the carrier is not changed : his liability only, to the extent of the exceptions, is diminished. In all things else, the very same principles apply. Care and diligence are still elements of the contract, and 'strict proof' is properly required before any exemption may be claimed." So, in *Swindler v. Hilliard*, 2 Rich. 286, 306, the court said, " The carrier's liability is diminished, to the extent of the exception, but his character is not changed. He is still a common carrier, so long as any

(27)

of the incidents and liabilities of that employment remain. He is a public carrier for hire, and the exception in the bill of lading does nothing more than excuse him where the loss has happened by fire without fault or negligence on his part."

In the case of *Selma & Meridian Railroad Co. v. Butts*, 43 Ala. 385, this court said, " The business of the whole country, and the vast necessities of commerce, require that these means of transportation shall not be abused to the injury of the citizen. They are, therefore, held to the strictest accountability for all losses occasioned by their neglect to discharge any of the duties attached by law to the office and trust of common carriers."—See, also, *Williams v. Grant*, 1 Conn. 487; *Neal v. Saunderson*, 2 Sm. & Mar. 572; *Leech v. Baldwin*, 5 Watts, 446; *Graham v. Davis*, 4 Ohio State, 362; *Caldwell v. N. J. Steam Nav. Co.*, 47 N. Y. 282; 2 Greenl. Ev. § 219; *Sager v. Portsmouth S. & P. & E. Railroad Co.*, 31 Me. 228; *Chamberlain v. Ward*, 21 How. 548; *Clark v. Barnwell*, 12 How. 272; *Rich v. Lambert, Ib.* 347.

In view of the very great necessity for skill and watchfulness in the management of steamboats navigating our waters, and carrying passengers and freight as a business, we approve and adopt the rule of diligence required in our sister States of Ohio and South Carolina, and hold that such common carrier, who would excuse himself under the exception found in this bill of lading, must be shown to have employed "that degree of diligence which very careful and prudent men take of their own affairs." In this we but affirm that only very careful and prudent men should be placed in charge of such vehicles of transportation, and that they shall employ their care and prudence actively, as such men watch over their own important interests and enterprises, of similar magnitude and delicacy. A more precise rule of diligence, in such cases, we are unable to lay down, as matter of law.

8. The act of congress, entitled " An act further to provide for the safety of the lives of passengers on board of vessels propelled in whole or in part by steam, to regulate the salaries of steamboat inspectors, and for other purposes," approved July 25, 1866 (14 Stat. at Large, 227), enacts, "That cotton, hemp, hay, straw, or other easily ignitible commodity, shall not be carried on the decks or guards of any steamer carrying passengers, except on ferryboats crossing rivers, and then only on the sterns of such boats, unless the same shall be protected by a complete and suitable covering of canvass, or other proper material, to prevent ignition from sparks, under a penalty of one hundred dollars for each offense." The steamer, in the present case, was carrying passengers, had on board a large quantity of cotton, stored on its guards

and lower decks, which was not "protected by a covering of canvass or other material," within the letter or spirit of the act of congress.    The cotton was ignited, but not from sparks, and the boat and cotton were burned up.    If there had been, over the cotton, "a complete and suitable covering of canvass, or other proper material," such as is used on steamboats (called *tarpaulin*), the cotton would not have ignited, and both it and the boat would have been saved.    It is contended for appellant, that this failure to conform to the requirements of the act of congress was, *per se*, negligence, which renders the appellee liable for the cotton.    Against this view it is urged, that the purpose of the enactment was, what the title shows, "further to provide for the safety of the lives of passengers;" and that it neither increases nor diminishes the liability of the carrier in the matter of freight.

In the case of *Brown v. The Buffalo & State Line Railroad Co.*, 22 N. Y. 191, there was an ordinance of the city, which forbade, under a penalty, "the moving of locomotives or cars on any portion of the defendant's railway, within the city, at a rate of speed exceeding six miles an hour."    Plaintiff's intestate, crossing the track of the railroad on a public street, was struck and killed by defendant's train, which was "moving at a rate of speed exceeding six miles an hour."·    A bare majority of the court decided, "that the simple act of the defendant, of running the train at a greater rate of speed than six miles an hour, unconnected with any actual negligence, involved the defendant in no other consequences than the payment of the penalty."    DENIO, SELDEN, and CLARKE, JJ., dissented.    In the case of *Fillo v. Jones*, 43* N. Y. 328, this case was cited approvingly, and an opinion delivered, not distinguishable from the last one in principle.    In the case of *Jetter v. N. Y. & Harlem R. R. Co.*, 41* N. Y. 154, speaking of the case from 22 N. Y. *supra*, the Court of Appeals said: "That case stands upon grounds altogether too doubtful to justify its application to cases not strictly within it.    The opinion confounds all distinction between civil remedies and criminal punishments, and the authorities cited by it go no farther than to hold that, when a specific penalty is prescribed by a law forbidding an act not *per se criminal*, the act *is not otherwise punishable as a public offense*.    It failed to recognize the axiomatic truth, that every person, while violating an express statute, is a wrongdoer, and, as such, is, *ex necessitate*, negligent in the eye of the law; and that every innocent party, whose person is injured by the act which constitutes the violation of the statute, is entitled to a civil remedy for such injury, notwithstanding any redress the public may have."

In Shear. & Redf. on Negl. § 484, it is said : "Certain precautions are required of railroad companies, by statutes or local ordinances, and enforced by the imposition of penalties for their neglect; such, for example, as a limitation of speed in certain places, a requirement that a bell shall be rung on approaching a highway, &c. These regulations being clearly intended for the protection of travellers, it would seem natural to suppose, that any violation of them should be deemed culpable negligence, in an action brought by a traveller; and so it is generally held." Speaking of the case of *Brown v Buffalo, &c., R. R. Co., supra,* the same authors said : "We do not think, however, that this decision will be followed in any other State ; and we doubt whether it will long be adhered to even in New York."—See, also, *Liddy v. St. Louis R. R. Co.,* 40 Mo. 506.

In *Langhoff v. Milwaukee & P. Du Chn. Railway Co.,* 19 Wisc. 489, it was adjudged, against the railroad company, that "the fact that the speed [of the train] was unlawful, must be considered in determining the question of negligence." To the same effect is *Blannier v. L. & Y. Railway Co.,* 8 Court of Exchequer, 283.

We do not think the case of *Brown v. Buffalo, &c., R. R. Co.,* 22 N. Y., can be supported on principle, and we can not follow it. In that case, the controlling purpose of the ordinance, no doubt, was a better protection to human life, by preventing the surprise and danger which a rapid-moving train might cause to persons in a city, whose business or pleasure caused them to cross the railroad tracks. The death of Mr. Brown was the direct, immediate consequence, and the very result which the ordinance was intended to prevent. No rule of law is better settled, than that the violator of both the letter and spirit of a statute is amenable to any person who is injured proximately by such violation, if the injury be within the mischief intended to be prevented. Such was the case in *Brown v. Buffalo, &c., R. R. Co., supra,* and we are not surprised it did not give satisfaction.—See *Fawcett v. York, &c., R. R. Co.,* 2 Eng. L. & Eq. 289 ; *McCall v. Chamberlain,* 13 Wis. 637 ; *Corwin v. N. Y. & Erie R. R. Co.,* 3 Kernan, 42.

But this principle does not fully meet the wants of the present case. The act of congress of July 25, 1866, was expressly designed for "the safety of the lives of passengers;" and property destroyed is the *gravamen* of the present suit. We have, then, the case of the violation of a statute, intended for the protection of life, the immediate, proximate consequence of which violation is the loss of property. Is the violator of such statute responsible civilly for the damage?

In *Waring v. Clark*, 5 How. U. S. 441, 465, it is said : "Signal lights at night are a proper precaution, conducing to the safety of persons and property. The neglect of it, or of any other requirement of the statute, subjects the masters and owners of steamboats to a penalty of two hundred dollars, which may be recovered by suit or indictment. But, besides the penalty, if such neglect or disobedience of the law shall be proved to exist, when injury shall occur to persons or property, it would throw upon the master and owner of a steamboat, by whom the law has been disregarded, the burden of proof to show that the injury done was not the consequence of it."—See, also, *N. J. Steam Nav. Co. v. Merchants' Bank*, 6 How. U. S. 344, a very interesting case.

In the case of *Renwick v. N. Y. Cen. R. R. Co.*, 36 N. Y. 132, the statute required the ringing of a bell on trains, while approaching and crossing highways. The court said : "If no signal was given, from the train, of its approach to the crossing where the injury occurred, either by the ringing of the bell, or the sounding of the whistle, the defendants are chargeable with negligence."

The case of *Wakefield v. Conn. & Passumpsic Rivers R. R. Co.*, 37 Verm. 330, was very peculiar in its circumstances. The statute required that, "on every locomotive engine, the bell shall be rung, or the steam whistle blown, at least eighty rods from the place where the railroad shall pass any road or street on the same grade, and the ringing or blowing shall be continued until the engine shall have passed such crossing." Plaintiff, in a vehicle drawn by horses, had crossed the track, and was travelling the road, parallel with the railroad track, about thirty rods from the crossing, when a train, approaching from the opposite direction, first blew its whistle, about five rods from the plaintiff, and thirty or forty rods from the crossing. Plaintiff's horses took fright, broke from his control, and, getting loose from the vehicle, returned to the crossing, and were injured by the train. The argument was, that if the whistle had been sounded eighty rods from the crossing, the plaintiff could have kept his horses under control, and thus avoided the injury. The court said : " Two questions are made in this case, under this provision of the statute : 1st. Whether the plaintiff, having passed the crossing, and got some thirty-five rods from it, on his way, before the engine arrived at the place prescribed, may insist upon having the bell rung, or whistle blown, as upon a duty due to himself. It seems plain that the purpose of the law is to secure as much safety as could be done by notice of the approach of an engine, against accidents at, and by reason of such crossing. While such accidents are, in the main,

likely to happen to persons approaching, and about passing such crossing, yet they are not confined to such persons. And we think it would be an unwarrantable restriction of this provision of the statute, to hold that the duty thereby imposed has reference only to persons approaching, or in the act of passing the crossing. In our judgment, that duty exists in reference to all persons who, being lawfully at, or in the vicinity of a crossing, may be subjected to accident and injury by the passing of engines at that place."

In *Wilson v. Pres. & Dir. Susquehanna Turnpike Co.*, 21 Barbour, 68, the court said, "If there was a failure on the part of the defendant to comply with an express requirement of the statute, either as to the width of the road, or the mode of its construction, and a person travelling over it sustained an injury in consequence of such omission, the defendant is responsible, unless it appears that the plaintiff could have avoided the injury by the exercise of ordinary care and prudence. * · * The omission to comply with the statutory requirement is a nuisance, for which a party, injured without negligence on his part, may claim damages."

In Shearm. & Redf. on Neg. § 13a, it is said, "If a railroad company is required by law to fence its track, to ring bells, or to give other warnings of danger; or, if one building a wall is required to make it of a certain thickness; or if obstructions to a street are prohibited; a violation of any of these legal regulations is sufficient evidence of negligence."

In *Dale v. Hall*, 1 Wils. Rep. 281, LEE, Ch. J., said, "Every thing is a negligence in a carrier or hoyman, that the law does not excuse."—See, also, *G. & C. Union R. R. Co. v. Dill*, 22 Ill. 264; *C. B. & Q. R. R. Co. v. Triplett*, 38 Ill. 482; *A. & S. R. R. Co. v. McElmurry*, 24 Geo. 75; *Ernst v. Hudson River R. R. Co.*, 35 N. Y. 9, 35; *Corwin v. N. Y. & E. R. R. Co.*, 3 Ker. 42; *McCall v. Chamberlain*, 13 Wis. 637; *Fawcett v. Y. & N. M. R. R. Co.*, 2 Eng. L. & Eq. 289; *James B. Wright v. M. & M. R. R. Co.*, 4 Allen, 283; *Linfield v. O. C. R. R. Corp.*, 10 Cush. 562.

In Shearman & Redf. on Negligence, § 344, it is stated, as a general rule, "that one who sustains a special and particular injury from an unlawful act, prejudicial to the public, may maintain an action for his own special injury." So, in 1 Addison on Torts, 241, it is said, "Whenever a special or particular damage is sustained by a private individual, from a public nuisance, an action for damages is maintainable." *Crommelin v. Coxe*, 30 Ala. 318; *Loflin v. McLemore*, 1 Stew. 133.

It is a fmiliar principle of criminal law, that one who, in the commission of a crime, or even of a trespass, by misad-

venture, and without intention, inflicts a personal injury on another, is liable criminally for the latter act, the grade of his guilt being measured by the grade of the crime or offense he was knowingly committing. Thus, an offender who, in the commission of an independent felony, accidentally commits a homicide, is adjudged guilty of murder. If he had been committing a misdemeanor, or trespass, and had slain another by misadventure, this would have been manslaughter. In such cases, the guilt of the offense intended is transferred to the injurious act done, and the gravity of the one determines the magnitude of the other.—2 Whar. Amer. Cr. Law, §§ 997-8-9, 933, 965 ; *McManus v. The State*, 36 Ala. 285.

It might be argued that, inasmuch as steamboats, carrying passengers, were, under the act of congress of July 25, 1866, required to protect cotton and other combustible freights by a complete covering, this would operate an inducement to ship cotton on boats that carried passengers, rather than on those that simply carried freights. We prefer, however, to base our opinion on other and broader grounds. Governed by the principles above declared, and by the analogies of the law, we hold, that the appellee, in running its boat in palpable disregard of the act of congress, as to a complete covering of the cotton, rendered itself accountable for the damage which resulted to the appellee, the same being manifestly a direct consequence of such disregard of the statute.

9. It is contended, however, that because the act of congress of July 25, 1866, was expressly repealed by the act approved February 28, 1871 (16 U. S. Statutes at Large, 440), which repeal was before this case was tried in the Circuit Court, the present action, so far as it rests on that statute, is in the nature of a suit for a penal liability, and must fall with it. But this is not a penal action, nor a suit in the nature of a penal action. It is a suit to recover damages, which resulted to the plaintiff, from the failure of the defendant to conform to the requirements of an act of congress. The failure and consequent loss fixed the charge of negligence upon the carrier, and denied to him the defensive protection, reserved in the bill of lading, against loss by fire. The loss, then, in the eye of the law, was the result of negligence; because a violation, by a common carrier, of a duty enjoined by law, is negligence. A subsequent repeal of the statute cannot convert negligence into diligence. In *Woods v. Armstrong*, at December term, 1875, we considered a question similar to this; and then held that the repeal of a statute, which enjoined a duty, did not purge the taint in a contract, made while the statute was in force, and in disregard of its terms.

Many of the rulings of the Circuit Court were not in harmony with the principles we have declared. We deem it unnecessary to point them out.

The judgment of the Circuit Court is reversed, and the cause remanded.