# Leach, Harrison & Forwood *v.* Bush *et al.*

*Action by Consignors against Consignees for Failure to demand and take Possession of Goods, &c.*

1. *Variance between affidavit and complaint; when waived.*—The right to move to reject the complaint, in a suit commenced by attachment, because not supported by the affidavit, is waived by appearance, setting the case for trial on issues of fact, and taking testimony for the defence, before making the motion; and the action of the court on such a motion is not revisable, if not excepted to.

2. *Complaint; sufficiency of.*—Where the gravamen of the action is the alleged misfeasance or non-feasance of another, it is sufficient, as a general rule, if the complaint avers in intelligible form, so that a material issue of law or fact can be taken thereon, the facts from which the duty to act springs, and that the defendant negligently failed to do and perform, &c.; it is not necessary to define the *quo modo*, or to specify the particular acts of diligence, which should have been employed in the performance of the duty.

3. *Same.*—A complaint averring that plaintiff made a consignment of goods to defendants for sale on plaintiff's account; that defendant had notice thereof, and accepted the consignment, and agreed and undertook to act as agents and factors of plaintiff in relation thereto, and to demand, receive and sell the same as plaintiff's agent, but that not regarding their duty, negligently and carelessly failed to do so, whereby loss occurred, &c., sufficiently shows a cause of action in plaintiff against defendants; and is not demurrable, because it does not specify in what the negligence consisted; and under its allegations, proof may be made of facts making it the duty of the defendants to sue to get possession of the consignment, and their failure to do so.

4. *Consignee; when liable to consignor for failure to take legal steps to obtain possession of consignment or proceeds thereof.*—B., of Mobile, Alabama, consigned to L., H. & F., cotton factors and commission merchants, at Liverpool, England, a consignment of cotton for sale there on account of B. L., H. & F. had notice of the consignment, received a bill of lading showing of what it consisted, and got from the ship, on which it was laden, all but nine bales, the marks of which had been so obliterated on the voyage that it could not be distinguished from cotton belonging to others, and in like condition. The ship's owners thereupon announced that they would sell all of the cotton in this condition, and account *pro rata* to the different

[Leach, Harrison & Forwood v. Bush et al.]

owners. This was about ten days after the arrival of the vessel. L., H. & F. did not object to this proposition and took no steps to prevent the sale. The sale was accordingly made by the ship's owners, but the proceeds were never paid over. L., H. & F. "persistently dunned" the ship-owners for the money, but took no legal steps to secure the proceeds of the sale. About two months after the arrival of the vessel, the owners suspended payment, and shortly afterwards went into bankruptcy. L., H. & F. had a mortgage on the vessel for a large amount, out of which they expected to obtain enough to pay B. for his cotton; but it did not bring the amount of the mortgage debt.

*Held:* 1. It was the duty of L., H. & F. to take such steps to obtain possession of the cotton or its proceeds, as an ordinarily prudent man would have taken with regard to his own property similarly circumstanced; and having allowed the owners of the vessel to make the sale, they must be regarded as the agents and employes of L., H. & F., who must answer for their defaults.

2. The confusion of goods did not cause them to pass into the bankrupt effects of the ship-owners, but the property still remained in the owners, and L., H. & F. being consignees, *prima facie* had the right to sue in their own names; and it was their duty to take proper legal steps to protect the consignment or the proceeds for the rightful owner, and the failure to take such steps was negligence, for which they are liable to the consignors.

5. *Charge; what properly refused.*—A charge, in such a case, that the defendants were not liable, "if a suit against the ship and ship-owners would have been fruitless on account of the bankruptcy of the ship-owners," is properly refused; it ignores all consideration of a remedy against the cotton or its proceeds.

APPEAL from Circuit Court of Mobile.

Tried before Hon. JOHN ELLIOTT.

Bush, Fogle & Greer commenced suit, by attachment, against Leach, Harrison & Forwood, the appellants, to recover damages of the latter for certain breaches and omissions of duty, hereinafter more particularly noticed, with respect to a consignment of cotton to defendants, for sale on account of the plaintiffs. Greer died shortly afterwards, and the complaint was filed in the name of Albert P. Bush and John C. Bogle, surviving partners of the late firm of Bush, Greer & Bogle, who sue to the use of Albert P. Bush. The complaint contained three counts. The first count averred, in substance, that in January, 1866, the firm of Bush, Greer & Bogle owned eighty-five bales of cotton, and being desirous of shipping said cotton to Liverpool, England, for sale, caused the same to be laden on board a vessel called the "Maxwell," then lying in the port of Mobile, and bound for the port of Liverpool; that the master of said vessel executed and delivered to Fowler, Stanard & Co., as agents and shippers for said Bush, Greer & Bogle, a bill of lading of said eighty-five bales of cotton, in the usual form, whereby he, said master, agreed and promised safely to carry and deliver said cotton to defendants, a firm then doing business

[Leach, Harrison & Forwood v. Bush et al.]

and receiving consignments of cotton in Liverpool, England; that said defendants received one part of the bill of lading, whereby they had notice of said shipment; that defendants, having notice of the consignment, "accepted the same, or the bill of lading as aforesaid, and then and there agreed and undertook to act as agents and factors of Bush, Greer & Bogle in reference thereto, and to demand, receive and sell the same as such agents and factors of said Bush, Greer & Bogle; that of the eighty-five bales of cotton consigned as aforesaid, &c., the vessel on which they had been laden and shipped arrived safely in the port of Liverpool, and delivered seventy-six bales to the defendants, who received and took the same into their possession or under their control, as part of the consignment of eighty-five bales as aforesaid, and sold said seventy-six bales, as agents and factors and for and on account of said Bush, Greer & Bogle. And plaintiffs aver that the residue of said eighty-five bales of cotton—to-wit, nine bales, a part of said eighty-five bales—so consigned as aforesaid to said defendants, and as to which defendants were the agents and factors of said Bush, Greer & Bogle, were also unloaded from said vessel 'Maxwell' in the port of Liverpool, of which defendants had due notice; and plaintiffs aver that it then and there became, and was the duty of defendants, as agents and factors of said Bush, Greer & Bogle, to demand and take into their possession, or under their control, the said nine bales of cotton, but said defendants, not regarding their duty in the premises, negligently and carelessly failed so to do, and by reason of the negligence and want of care and attention of said defendants, the said nine bales of cotton were totally lost to the said Bush, Greer & Bogle," to their damage, &c.

The second count is for neglect in not demanding, or not receiving and taking care of said nine bales of cotton; and the third, for not taking proper care of the same.

The defendants demurred to the first count of the complaint, because it did "not show a cause of action in the plaintiffs against the defendants." The record then recites, the "defendants crave oyer of the bill of lading referred to in said complaint, and the same being read to them as follows: 'Copy bill of lading:' [No copy of this bill of lading can be found in the record.—REPORTER.] And said defendants demur, 'because said first count does not show that said defendants had such a right of action or title as would authorize them, in the port of Liverpool, to bring suit for said cotton, and the complaint does not show default or

liability, on part of said defendants, for said cotton, by reason of anything stated in said complaint, as to make them liable for damages to said plaintiffs.'"

Another ground of demurrer was, that it appeared that "said cotton was shipped by Fowler, Stanard & Co. as owners, and not by plaintiffs."

Still another ground of demurrer was, that it does not appear from said complaint and bill of lading that any right or title in and to said cotton vested in defendants, enabling them to bring suit against the ship, or ship-owners, for loss of said nine bales of cotton.

The second and third counts were also demurred to. It is, however, unnecessary to notice these demurrers further, as the questions of law raised by them are involved in the demurrer to the first count.

These demurrers were all overruled, and a trial was had on the plea of the general issue, with leave, &c., which resulted in a verdict and judgment for the plaintiff. A motion was made by defendant to strike out the complaint, because it was a departure from the cause of action stated in the affidavit, &c. It is unnecessary to notice this motion further, because no exception was reserved to the order overruling it, and the right to make the motion had been waived by appearing, setting the case for trial on issues of fact, and taking testimony for the defence, before making the motion.

The "undisputed proof" was, that Leach, Harrison & Forwood reside in Liverpool, England, and were and are *del credere* agents and commission merchants there for the sale of cotton. In 1866, Bush, Greer & Bogle did business in Mobile, and owned eighty-five bales of cotton, which they shipped for sale to defendants, through Fowler, Stanard & Co., who were agents of defendants in Mobile to solicit shipments of cotton. The cotton was shipped by the ship "Maxwell," and was to be accounted for to Bush, Greer & Bogle. Greer died after the commencement of the suit, and Bush had purchased all the right, title and interest of Bogle in the firm of Bush, Greer & Bogle, including the claim in controversy.

The ship arrived at Liverpool on March 7th, 1866, and delivered all of said cotton to defendants, except nine bales. The defendants, on the 16th day of the same month, called on the owners of the vessel for the nine bales, and were told that the "marks of a considerable number of bales of the cargo were obliterated on the voyage; that the marks of other bales than these nine had been obliterated, so that

it was impossible to distinguish the nine bales from other cotton belonging to other shippers." The owners of the vessel told defendants they intended to sell at auction the whole of the cotton, the marks of which had become obliterated, and "divide the money equitably among the shippers who had received short delivery." The owners of the vessel accordingly sold the cotton, whose marks had been obliterated, but never paid over the proceeds; and on the 20th day of May suspended payment, and subsequently executed a deed of inspectorship, under the English bankrupt law, which was registered June 26th, 1866, and which deed, as between debtor and creditor, has the same effect as if the debtor's estate was administered in bankruptcy. Defendants took no legal steps to prevent the owners of the vessel from selling the cotton, but "they diligently dunned the owners for the value of the cotton." "The evidence was conflicting whether defendants were diligent or negligent in their efforts to protect the plaintiff's cotton." It was further proved, that after the commencement of suit, one of defendants and a member of the firm of Leach, Harrison & Forwood, called to see Bush, with a view of getting him to release the attachment, on defendant's offer to leave money enough in the hands of plaintiff's attorneys to pay plaintiff in event of success. "Plaintiff declined this, and said, 'you have lost my cotton by negligence, and I will not release the attachment;' whereon, defendant replied that he was not negligent; that he would have been more diligent to save plaintiff's cotton, but defendant's firm had a mortgage on the vessel for a large amount, and they supposed they would realize enough from the proceeds of the sale of the vessel to pay defendant's mortgage, and leave a surplus to pay for plaintiff's cotton, but the vessel did not sell for enough to pay the mortgage."

There was evidence tending to show that the cotton, the marks of which were obliterated, was in Liverpool, in the ship's owners possession; and there was no proof that defendants made any objection or efforts to prevent the ship-owners from selling it at auction, although they knew of the amount of cotton with obliterated marks, and of the intention of the ship's owners to sell it at auction. The court charged the jury as follows:

"That the consignee or factor in this case stood in the place of owner. It was his duty to demand and receive the goods, and this means not only to demand but to get the goods by resort to law, if necessary. Defendants insist that

they had no remedy, but I charge you if you believe from the evidence that defendants, as factors, chose to trust the owners of the vessel to sell the cotton and distribute the money, it was at their own risk. It was the defendant's duty to resort to all legal means to get the cotton. I will not undertake to tell you what particular remedy they would have in Liverpool, or what form of proceedings would have been best under the circumstances, but, nevertheless, the law gives some remedy to prevent such a sale. It may be, that there is no remedy in England to enforce the admiralty lien on the vessel for freight not delivered, still the lien exists; and there is a remedy to protect the cotton and its proceeds for the benefit of those whose marks have been obliterated.

"The failure to resort to legal means is negligence, and makes a factor liable. Under the evidence you must determine whether the defendants ought to have resorted to law. I charge you that the law would have given a remedy."

This charge was excepted to by the defendants. The defendants then requested nine written charges, all of which were given except the fourth charge, which was refused; and to which refusal the defendants excepted. The charge was as follows:

"If the jury believe from the evidence, that a suit at the instance of defendants against the ship and owners for the recovery of the cotton would have been fruitless on account of the bankruptcy of the ship-owners, or other cause, then defendants are not liable in this action for failure to bring suit."

The overruling of the demurrer, the charge given, and the refusal to charge as requested, are now assigned for error.

ANDERSON & BOND, for appellants.*—Leach, Harrison & Forwood were agents only, without any interest in the property for advances or otherwise, having no right of property in the goods until they got possession. Necessarily any suit brought by them must have been in the name of Bush, Greer & Bogle.—Winter v. Coit, 7 N. Y. 288; Sargent v. Morris, 3 B. & A. 277; Abbott on Shipping, p. 430. It is the duty of a factor to attend to the receipt of goods and to exercise proper diligence to get them. Here plaintiff's agent, the owners of the vessel, could not deliver—the marks were

---

* NOTE BY REPORTER.—It seems from the brief of appellants which came into the Reporter's hands, that a separate brief was filed in support of the assignments of error upon the ruling on demurrer. This brief has not been found.

[Leach, Harrison & Forwood v. Bush et al.]

obliterated, and there was no way to identify the cotton. It was not then known or suspected that the ship-owners were insolvent. Neither is it shown that any other of the owners of cotton so situated objected to the sale. The only ground on which the appellants are sought to be held liable, is that they did not bring suit. Extraordinary diligence is not exacted of factors. They are required to use no more diligence than good business men of their order and places are accustomed to apply.—*Millbank v. Dennistown,* 21 N. Y. 386. Would an ordinarily prudent man have deemed it proper to have instituted suit under the circumstances? We have been unable, after diligent search, to find any case where it is held to be the duty of a factor to institute suit in the name of his principal. Suppose the suit should fail, and Bush be held liable for costs, attorney's fees, and other expenses; would any court hold that the factor, in the absence of specific instructions, had the right to bring such suit, and fasten the costs and expense on the owner of the goods? At the time the cotton was sold, the ship-owners were supposed to be solvent. They were the carriers selected by the principal, and were liable. Interference by the factors would have absolved them from that liability. The duty of appellants commenced where that of the ship-owners ended. It was their duty to receive, the ship-owners to deliver, the cotton. No suit at law could have been maintained for the cotton. There had been an accidental confusion of goods, and each owner of the goods took an interest in the whole in proportion to their respective shares. What process would have been necessary to get the cotton out of the ship-owners' possession? Nothing short of a bill in equity, to which the ship-owners, and all persons interested in the cotton, would be necessary parties. A writ of seizure and injunction against sale, would alone have been effectual. And this could not have been procured except upon allegation of fraud or insolvency, and upon giving heavy bond. The possession by the carrier of the unmarked cotton at the termination of the voyage, was lawful and proper so far as concerned appellants. In the absence of fraud or insolvency they were the proper parties to make distribution of the unmarked cotton. The court should have instructed the jury that the failure to bring suit must have been the proximate cause or occasion of the loss.

It was not sufficient that the failure to bring suit was negligence, unless it contributed directly to bring about the loss. All the authorities agree that the damage must be

[Leach, Harrison & Forwood v. Bush et al.]

the ordinary and natural sequence of the neglect or omission.—Wharton on Negligence; *Foster v. Holly*, 38 Ala. 82.

The defendants found themselves unexpectedly and without any fault on their part, in a condition which was very unusual and extraordinary. In such a case it is not enough to prove an injury to the plaintiff, but something that defendants did or omitted to do must be shown to have been the *cause* of the injury.—Wharton on Neg. § 129, and notes; *Byrne v. Boodle*, 2 H. and C. 722; *Vaughn v. Taffdale R. C.* 5 H. and N. 679; *Skinner v. London B. and S. R. C.* 5 Exch. 788; *Freemantle v. London and N. W. R. C.* 10 C. B. N. S. 89.

The evidence as to negligence was conflicting, and the court should have left the whole matter with the jury.—17 Wallace, 659; 38 Ala. 76.

R. INGE SMITH, *contra.*—The particular remedy by which appellants could have saved the nine bales of cotton is not material. The question is, was there any remedy? if so, was there negligence on the part of appellants in not resorting to it? The facts of the case show that the appellants stood by and allowed the cotton to be sold, and the proceeds to remain with the ship-owners, until bankruptcy put an end to any chance to get the money from them. Appellants would have been "more diligent," but they had a mortgage for a large amount on the vessel, and supposed a surplus would have been left after selling it, out of which to pay plaintiffs' claim; but the proceeds of the sale of the vessel did not pay the mortgage debt. Little over a month after the arrival of the ship, on which defendants had the mortgage for a large amount, the owners of the vessel went into bankruptcy. The owners of the cotton were far away, and appellants as *del credere* commission merchants as to this consignment, could have used the owners names, in a suit to protect the cotton.—41 Ala. 667; 11 Ala. 609. Appellants ought certainly to have objected to the sale. An objection by parties holding "a mortgage" on the vessel, might have stopped the sale, and the goods would, perhaps, have remained as they were, capable of being followed and protected in the bankrupt court. A court of chancery could have seized the confused goods, and protected the rights of the parties.—1 Story Eq. Jurisprudence, § 622. The insolvency of the ship-owners was no excuse for not taking legal steps to protect the cotton, which was not the property of the bankrupts, and could not pass into the hands of the

bankrupt court as property of the bankrupts.   If the prop-
erty had remained *in specie*, the bankrupt court would have
protected appellants' rights.   The duty of selling the cotton
was confided to appellants, and not to the owners of the ship.
In not attempting to stop the sale, and in entrusting it to
the ship's owners, the appellants virtually made the ship's
owners their agents, and became responsible for their de-
faults.   Allowing the ship-owners to sell was the cause of
appellee's loss.   It was a breach of duty by the appellants,
resulting in loss to appellee.   After the consignee is notified
of the consignment, and the goods actually arrive at the port
of destination, and part are received, and there is delay in
delivering the rest, it is *prima facie* the duty of the consignee
to take legal steps to secure the goods.   If there be excuse
for not doing so, it devolves on the consignee to show it.
There was ample evidence before the jury to warrant them
in finding that the appellants had been negligent.   The
charge of the court put the matter properly before the jury.
The fourth charge requested was properly denied.   It would
have led the jury to believe that the defendants were not
liable, if a suit against the *ship-owners* would have been
fruitless.   It ignored all consideration of the questions
whether legal steps to take the *property* would have been
fruitless, and whether defendants were negligent in not
taking such steps.   The action was for negligently failing to
receive, demand, and take care of the cotton, &c.   Under
this, proof could be made of facts rendering suit necessary
by consignees to get possession, and the failure to bring such
suit.—1 Chit. Pl. 332, m. p. 333; 1 Price, 109.

STONE, J.—We propose not to consider any question
raised on the affidavit or writ of attachment, or on the mo-
tion made in the court below, to reject the complaint as not
supported by the affidavit.   If there ever was anything in
either one of these objections, it has been waived and healed by
appearance by defendants, setting the case for trial on issues
of fact, and by taking testimony for the defense ; all of which
was done before the motion was made.—*Marshall v. White*,
8 Por. 551; *Jordan v. Hazzard*, 10 Ala. 221; 1 Brick. Dig.
164, §§ 145, 146, 147; *Watson v. Auerbach*, at present term.
Moreover, there is no question reserved by exception to
this ruling.   This itself is fatal.—*Stewart v. Goode*, 29 Ala.
476 ; *Jarman v. McMahon*, 37 Ala. 431.
Pleadings are statements of the facts involved in the issue,
and need not contain the evidence which supports them.

They " must be as brief as is consistent with perspicuity, and the presentation of the facts or matter to be put in issue in an intelligible form; no objection can be allowed for defect' of form, if facts are so presented that a material issue in law or fact can be taken by the adverse party thereon."—Revised Code, § 2629. They must not be "unnecessarily prolix, irrelevant, or frivolous," and if so, "may be stricken out at the cost of the party so pleading."—Revised Code, § 2630. The forms given in the Revised Code, p. 673, are samples of brevity, furnished by the legislature itself. When the gravamen of the action is the alleged non-feasance or mis-feasance of another, as a general rule, it is sufficient if the complaint aver facts out of which the duty to act springs, and that the defendant negligently failed to do and perform, &c.; not necessary to define the *quo modo*, or to specify the particular acts of diligence he should have employed in the performance of such duty. What the defendant did, and how he did it, and what he failed to do, are generally better known to the defendant than to the plaintiff; and hence it is, that in such cases, a general form of averment is sufficient. 1 Chit. Pl. 336.

We think the complaint in the present case is sufficient, and that the demurrer to it was rightly overruled.

The title to goods shipped—the right to demand and receive—as a general rule, vests, on shipment, in the consignee. To him, *prima facie*, is the carrier responsible for safe delivery. His promise, though often made to another, is to deliver to the consignee.—*Jones v. Sims*, 8 Por. 138; *Ezell v. English, ib.* 311; *Cox v. Early,* 11 Ala. 362; *McGill v. Monette,* 37 Ala. 49; *M. & W. P. R. R. Co. v. Edmonds,* 41 Ala. 675-6.

In the present case, the cotton was shipped from Mobile, to the consignees in Liverpool, England, to be there received and sold for account of the owners in Mobile. The consignees were commission merchants, knew of the shipment, were in possession of one of the bills of lading informing them of the number of bales shipped, and actually received from the vessel seventy-six of the eighty-five bales which the bill of lading called for. The consignees demanded the missing bales of the captain of the vessel, and were informed by him that the marks on the nine bales, and on other bales shipped by the same voyage, had become so obliterated that they could not be distinguished, thus producing a confusion of goods; that he had all the goods shipped, but could not separate the several lots. All the testimony bearing on the

question shows that the ship-captain thereupon proposed, or announced his purpose to sell the confused cotton at auction, and to account for the proceeds to the different owners *pro rata*. The testimony tends to show that the consignees acquiesced in this; for they not only made no effort to prevent it, but so far as we are informed, did not object to it. Moreover, they gave as an excuse for not resorting to other means of diligence, that they thought they could indemnify themselves from another quarter, which, however, failed.

We hold that, situated as shipper and consignee were in this case, it was the duty of the latter to take such steps to obtain possession of the cotton or its proceeds as an ordinarily prudent man would have taken to possess himself of his own goods, similarly circumstanced. The goods were consigned to him, to be sold by him. The consignors did not confide in the ship-captain to make sale and account. We feel bound to hold, if the testimony truly represent the transaction, that in making the sale, the ship-captain must be treated as the agent and employe of the consignees, and that the doctrine of *respondeat superior* fixes the measure of the latter's liability.

Again, the confusion of the goods did not cause them to pass into the bankrupt effects of the ship-owners. They still remained the property of the several owners, and on proper proceedings, such property and its proceeds could have been saved to its rightful owners. It was the duty of the consignees to look to this.—1 Sto. Eq. Ju. § 623; 1 Bouv. Ins. § 506–7; Abbott on Ship. 325; 3 Dane's Abr. 119, ch. 76, art. 5, § 19; Edw. Bailments, 117; Sto. Bailments, § 40; Edw. Bailments, 81–2; *Byron v. N. Y. St. Pr. Tel. Co.* 26 Bush, 39; Adam's Eq. Marg. 237–8.

We have omitted to notice the fact that the consignees held a mortgage on the vessel on which the cotton was shipped, for a sum greater than the vessel yielded when sold. This furnishes an additional reason why they should have taken prompt measures to secure the cotton for their customers.

We have indulged in these remarks, not because we are judges of the facts, but to bring out the material points on which the jury should have been instructed, so as to direct their attention to the proper phases of the transaction on which diligence should have been exercised.

The exception to the affirmative charge was as a whole. To many of its separable propositions, no objections have been urged. This might be a sufficient answer to this exception. But we think the charge, as a whole, is free from error.

The charge refused (number four) should not have been given. Under the facts of this case, it was well calculated to mislead, if it was not wrong in its assumption. The cotton was there, and legal proceedings could have prevented it from going into the bankruptcy, even if the ship-owners became insolvent before a judgment could have been recovered. If no other remedy existed, the court of chancery could have seized and preserved the goods, and could have administered complete justice.

We consider no other question, for none other has been argued.

Affirmed.