# Birmingham Union Railway Co. v. Smith.

*Action for Damages by Passenger, for Personal Injuries.*

1. *Negligence in starting car while passenger is alighting.*—On the ordinary railroads of the country, operated by steam power, and stopping at regular stations, the conductor in charge of a train is only required to stop a sufficient time to allow passengers an opportunity to alight by the exercise of reasonable diligence, and, having so waited, is not guilty of negligence in putting the train in motion again, while a passenger is in the act of alighting, or otherwise in a dangerous position, unless he knew the fact at the time, or ought to have known it; but this principle does not apply to the driver of a street railway car, drawn by horses, whose duty it is, when signaled to stop, not only to stop a reasonable time for passengers to alight, but to see and know, before starting again, that no one is in the act of alighting, or in any other perilous position.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES B. HEAD.

This action was brought by Malinda Smith against the appellant, a corporation engaged in operating a line of street railway cars in Birmingham and vicinity, to recover damages for personal injuries sustained by plaintiff as she alighted from one of the cars, on which she had been riding as a passenger; and was commenced on the 27th August, 1888. The cause was tried on issue joined on the pleas of not guilty and contributory negligence, and resulted in a verdict for plaintiff, for $1,000. The facts of the case, as developed on the trial, are thus stated in the bill of exceptions: "The plaintiff introduced evidence tending to show that, on June 27th, 1888, she was a passenger on one of the defendant's street cars near Avondale in said county; that it was a close car, was full of passengers, and was drawn by mules, the place for passengers to get off and on being at the rear end; that another passenger in the

car rang the bell in Avondale, and the car stopped; that the driver was then standing in the center of the front platform, and had control of the car, there being no conductor; that plaintiff rose from her seat while the car was standing still, and went to the rear end to get off; that four or five other persons got off before her, and as she was in the act of stepping from the car, before both of her feet were off, the cars started with a jerk, and she was thrown to the ground with her face down, after making three or four quick steps straight out from the car; and that she was assisted in getting off the car by one Weiser, who placed his hand under her arm, but removed it as she was stepping from the car, and about the time the car started. The evidence of the plaintiff showed, also, that she was injured by said fall, the character of said injuries, and that her fall was caused by the said starting of the car while she was in the act of stepping from it to the ground; and there was evidence on the part of the defendant tending to show that her fall was not caused by the starting of the car, or any other fault or neglect of the defendant. The bell in the car was provided for passengers to ring, when they desired the cars stopped to allow them to get off. The plaintiff's evidence showed, also, that she arose from her seat as soon as the car stopped, and proceeded to go out, and went out as fast and as quick as she could in view of the crowded condition of the car, and of the fact that other passengers were also going out, some of whom preceded her; and there was no conflict in the evidence on this point, except the testimony of the driver, hereinafter set out, as to the length of time the car stopped. There was no evidence in the case, on behalf of either party, tending to show that the car started any earlier than at the point of time at which plaintiff was in the act of stepping from it to the ground. Defendant introduced evidence tending to show that it was the duty of the driver of said car to stand on the front platform, where he could control the mules and the brakes; that it was his duty to stop the car when the bell was rung, for those passengers to get off who desired to do so; that the bell was rung, and the car was stopped, just before the time when plaintiff got off said car, and remained at a stand-still the usual length of time, for those passengers to alight who desired to do so, that is, a minute or more; that the car was standing still when the plaintiff got off; that she stepped from the car, and stumbled and fell after taking three or four steps on the ground, and that there was no jerking or starting of the car at the time she was alighting from it."

This being "all the evidence in the case," the defendant requested five charges in writing, and duly excepted to their

refusal. The 4th and 5th charges are copied in the opinion, and the others were as follows: (1.) "If the jury believe from the evidence that the moment plaintiff started to get off the car was simultaneous with the starting of the car, they must find for the defendant." (2.) "If the evidence in the case leaves the jury in doubt and uncertainty whether the car was put in motion when plaintiff was in the act of getting off, or whether the moment she started to get off was simultaneous with the starting of the car, then they must find for the defendant." (3.) "If the jury believe from the evidence that the car was in motion when the plaintiff attempted to get off, they must find for the defendant."

The refusal of each of. the charges asked is assigned as error.

HEWITT, WALKER & PORTER, for appellant, cited *Railroad Co. v. Jones,* 83 Ala. 376; *Poulin v. Railway Co.,* 61 N. Y. 621; *Raben v. Railroad Co.,* 33 A. & E. R. R. Cases, 520; *Strauss v. Railroad Co.,* 27 *Ib.* 179; *Brown v. Railroad Co.,* 8 *Ib.* 383; Shear. & R. Negligence, § 508.

. STERRETT & CAMPBELL, *contra,* cited *Railway Co. v. Munford,* 3 A. & E. R. R. Cases, 312-15; 36 N. Y. 378-81; 38 N. Y. 131; 75 Penn. St. 83; 5 Amer. Rep. 71; Thompson on Carriers of Passengers, 443.

McCLELLAN, J.—The exceptions reserved go to the action of the trial court in refusing to give five charges requested by the defendant below. Of these the first, second and third were abstract. We find no evidence in the record tending to show "that the moment the plaintiff started to get off the car was simultaneous with the starting of the car," or "that the car was in motion when the plaintiff attempted to get off the car;" and these are the facts upon which these charges based defendant's right to a verdict. On the contrary, plaintiff's evidence tended to show that the car was standing still when she attempted to get off, and was started forward "with a jerk" when that attempt had been so far executed as that she was in the act of stepping off, having one foot on the step, and the other approaching, if it had not touched the ground; and the evidence of defendant tended to show that plaintiff was entirely off and free from the car before it was again started.

The fourth and fifth charges, requested by defendant, and refused, present the real question involved on this appeal. They are as follows: (4.) "If the car was stopped a sufficient length of time for the plaintiff to get off the car, by the exer-

cise of ordinary diligence, then you must find for the defendant, unless you believe from the evidence that the driver started the car in motion while the plaintiff was getting off the car, and knew she was getting off the car when he started the car." (5.) "If the defendant's car was stopped for a reasonable length of time, sufficient to have permitted the plaintiff to have gotten off safely by the exercise of reasonable diligence on her part, then you must find for the defendant, unless the evidence shows that defendant's car-driver knew, or had good reason to know, that plaintiff was in the act of getting off the car, or in a place of danger, when he started the car."

The doctrine of these charges, certainly as formulated in the last charge quoted, is thoroughly well established with respect to the ordinary railways of the country.—*Raben v. Central Iowa Railway Co.*, 33 Amer. & Eng. R. R. Cases, 520, and cases cited; *Strauss v. C. St. J. & C. B. R. R. Co.*, 27 Amer. & Eng. R. R. Cases, 170; s. c., 75 Mo. 175; 86 Mo. 421; *G. C. & S. F. R. R. Co. v. Williams*, 8 S. W. Rep. 78; *Pennsylvania R. R. Co. v. Peters*, 30 Amer. & Eng. R. R. Cases, 607–614.

Trains on such railroads are run on schedules. They stop only at designated stations, to receive and discharge passengers. The conductor knows in advance how many passengers are to alight at a given station. He may therefore determine with sufficient accuracy what would be a reasonable time for the train to stop to enable passengers for that station to alight, by the exercise of ordinary diligence on their part. The law, therefore, imposes on him the duty of holding the train for such reasonably sufficient time. It is not practicable for him to keep a watch upon all the exits from a train of cars. Not infrequently he has other things to do at stations where his train stops. The law, therefore, does not impose on him the duty of seeing and knowing that all of the passsengers, intending so to do, have alighted. Unless he knows, or has good reason to believe to the contrary, he may act upon the presumption that passengers have availed themselves of the ample time allowed, and gotten off the train. These reasons, which support the proposition of the fifth charge, as to cross country steam railways, do not obtain with respect to a horse-car railway. They have no stations, no regular stopping places, no schedules. The driver can not know beforehand where any passenger intends to alight, or how many passengers desire to get off at any place where he is signaled to stop. When he is signaled to stop, he must then inform himself by looking and seeing as to how many of his passengers desire and intend

[McDaniel v. Highland Avenue & Belt R. R. Co.]

to alight. Without this he can have no conception of the length of time the car should remain stationary. Having rendered his car immovable by applying the brakes, he has nothing else to do than to see who intend getting off, and to know that they are safely off before the car is again started. It is entirely practicable for him to do this. The only exits are under his immediate observation, and there is no other duty incumbent on him at the time to divert his attention from them and the alighting passengers.

Our opinion is, that it is the duty of the driver of a horse car, when signaled to stop, at least, to ascertain who and how many of his passengers intend to alight at that place, to wait a sufficient length of time to enable them to alight in safety by the exercise of reasonable diligence, and, in any event, to see and know that no passenger is in the act of alighting, or is otherwise in a position which would be rendered perilous by the motion of the car, when he again puts the car in motion. If he fail in any of these respects, and injury results from such failure, his employer is liable.—Thompson on Carriers, p. 443; *Poulin v. B. & S. Av. R. R. Co.*, 61 N. Y. 621; *Nichols v. S. Av. R. R. Co.*, 38 N. Y. 131; *Chicago City Railway Co. v. Mumford*, 3 Amer. & Eng. R. R. Cases, 312–315. See, also, *N. B. St. R. R. Co. v. Calderwood*, 7 So. Rep. 360; 89 Ala. 247.

Charges 4 and 5 were, therefore, properly refused; and the judgment is affirmed.

