# Gadsden & Attalla Union Railway Company *v.* Causler.

*Action by Passenger against Carrier for Personal Injuries.*

1. *Proximate cause.*—Riding on the platform of a car in violation of the rules of the carrier, is not the proximate cause of an injury to a passsenger received from backing the train after he had gotten off.

2. *Invitation to alight from train may be inferred from circumstances.* When a passenger on a dummy line is carried past the street crossing which was his destination and ordinary stopping place to the next crossing, where the train came to a full stop, and no notice was given him of an intention to back the train, it is proper to submit to the jury whether this was an implied invitation by those in charge of the train, for him to get off at that point.

3. *Charge requiring highest degree of skill by men of extraordinary diligence on part of carrier too exacting.*—While the highest degree of care, diligence and skill is exacted of those engaged in the carriage of passengers by railroads, a charge which asserts that it must be exercised by men of extraordinary care, skill and diligence, is erroneous.

APPEAL from the City Court of Gadsden.

Tried before Hon. JOHN H. DISQUE.

Thomas H. Causler brought this action against the Gadsden & Attalla Union Railway Company to recover damages for personal injuries. The second charge is copied in the opinion. Two others to which exceptions were also taken are as follows : "The court charges the jury that prohibiting passengers from riding on the platform of trains is a reasonable regulation; and if Causler violated that regulation, and rode on the platform, and without such riding on the platform, Causler would not have been injured, then in that event, Causler can not recover in this action." "The court charges the jury that if they believe from the evidence that Causler dismounted from the train as soon as it stopped, and that nobody connected with the train saw his peril in time to avoid it or could have seen it by due diligence in time to avoid it, then and in that event, Causler would not be entitled to recover in this case if his dismounting from the train, proximately contributed to produce the injury of which he complains."

DORTCH & MARTIN, for appellant.

W. H. DENSON, for appellee.

[Gadsden & Attalla Union Railway Co. v. Causler.]

STONE, C. J.—We do not think the fact that Causler, the plaintiff, had been riding on the platform of the car, should exert any influence in the consideration of this case, for several reasons : First. He had left the platform and was standing on the ground, when the train was backed which caused the injury. The injury was not at all dependent on the place from which he had come.. Second : Although his being on the platform was one of the attending conditions, without which he probably would not have been able to leave the train during its very short stop, yet there was no causal connection, as the law defines that term, between his violation of the company's rule in so riding, and the injury inflicted upon him. We have recently considered this question so fully that we need not repeat the argument, or reproduce the authorities.— *Western Railway of Alabama v. Mutch,* 11 So. Rep. 894 ; s. c. *ante,* 194 ; Beach Contrib. Neg. §§ 33, 34. This renders it unnecessary for us to consider charges given or refused involving the doctrine of contributory negligence, and relieves us of the discussion of charges 5 and 7 given at the instance of plaintiff, and charges 1, 2, 3 and 6 asked by defendant. They -were abstract, and there was nothing in those given that could prejudice defendant.

We discover little or no conflict or controversy in the testimony in this case. The plaintiff was in the habit of riding out on the dummy train, and of alighting from it at a certain crossing. Those in charge of the train had notice of his intention to leave the train at that crossing. The train was driven past the crossing without stopping ; but when approaching the next crossing, only 175 or 200 yards distant, it was brought to a full stop. Nothing was said of any intention to back the train to plaintiff's customary crossing. Plaintiff had previously gotten off the train at the point at which it was now stopped, and the ground at that place was level and smooth. The plaintiff stepped off the train, and while in the act of reaching back to the platform for his crutches, (he was a cripple), the train, without signal or warning, was moved backwards, knocking him down and inflicting the injury for which he sues. The question for our consideration is, were these circumstances sufficient to be submitted to the jury, on the inquiry of negligence in those having control of the train?

When a train is brought to a full stop at one's stopping place, or near to it having passed it, it is not customary, or expected that the passenger will be notified that this is his place of getting off. The circumstances, if

nothing is said or done to the contrary, are sometimes an invitation to alight. And if from the circumstances, in the absence of notice or warning to the contrary, he reasonably concludes that the train has been stopped that he may alight, he is certainly not guilty of negligence in acting on this apparent invitation.—*Cockle v. London & S. E. Rwy. Co.* 9 Id. 126; *Ill. Cen. R. R. Co. v. Able*, 59 Ill. 131; *Milliman v. N. Y. Cen. & H. R. R. R. Co.*, 66 N. Y. 642; *Cartwright v. Chic. & Gr. Tr. Rwy. Co.* 52 Mich. 600; *Curtis v. Det. & Milw. R. R. Co.* 27 Wisc. 158; *Highland Av. & B. Co. v. Burt*, 9 So. Rep. 410; 92 Ala. 291; *Birmingham Union Rwy. Co. v. Smith*, 90 Ala. 60; *Duame v. N. W. Rwy. Co.* 7 Amer. St. Rep. 879.

We hold that the circumstances were sufficient to authorize their submission to the jury; and that charges 1 and 4, given at the instance of plaintiff were authorized by the testimony, and correctly stated the rules of law to be observed in its consideration.

Charge 2, given at the instance of plaintiff, raises the question of the proper measure of diligence due to passengers from a common carrier for hire. It language is, "That the defendant is liable in damages to the plaintiff for any injury resulting to plaintiff that occurred because defendant's agents failed to take all such precautions to avoid the injury as would be suggested by the highest degree of care, skill and diligence, by men of extraordinary care, skill and diligence in carrying passengers by dummy line railways. And if the jury believe from the evidence in this case that plaintiff was injured while getting off defendant's dummy line railway because of the want of defendant's agents taking all such precautions to avoid the injury as would be suggested by the highest degree of care, skill and diligence by men of extraordinary care, skill and prudence in transporting passengers, then in such case the defendant is liable."

The measure of care, skill and diligence required to be observed by common carriers in the transportation of their passengers, has been very often considered and discussed by courts of last resort, and the tendency of modern adjudication has been to make the rule more exacting. This, no doubt, is mainly attributable to the fact, that steam has come to be almost exclusively the motive power employed in the transportation of passengers. The principle is not always stated in precisely the same terms. Wood in his excellent treatise on Railway Law, Vol. 2 § 301, says, "the highest degree of reasonable care is required from railway companies in the carrying of passengers, and all the

Vol. 97.

appliances employed therein. By this it is not meant that they are required to exercise superhuman care and vigilance, or the utmost care, but such care in view of the circumstances as a reasonably prudent man would exercise, in view of the consequences likely to ensue from a relaxation of such care and vigilance." In § 313 the same author employs this language : "The law impliedly raises a contract on its [the carrier's] part to carry such person safely, so far as human foresight reasonably exercised can guard against disaster."

In Thompson, Carriers of Passengers, 123, the principle is thus stated : "Carriers of passengers for hire are bound to use the utmost care and diligence . . . in order to prevent those injuries which human care and foresight can guard against." See also 2 Redfield on Railways § 192.

In 2 Wait, Ac. & Def. 63, is this language : "He [the carrier] is bound to use the *utmost care* which is consistent with the nature and extent of the business in which he is engaged, in the providing of safe, sufficient and suitable vehicles or vessels and other necessary or appropriate instruments and means of transportation, as well as in the management of the same, and in making such reasonable arrangements as a prudent man would make to guard against all dangers, from whatsoever source arising, which may naturally and according to the usual course of things be expected to occur."

Patterson, Accident Railway Law, 199 to 203, and 2 Amer. & Eng. Encyc. of Law, 739, do not appear to have attempted to give an explanation, or specific definition of the nature and requirements of the rule.

This subject has been frequently before this court. In *M. & E. Rwy. Co. v. Mallette*, 92 Ala. 209, the trial court had charged the jury that "the law required the highest degree of care, diligence and skill by those engaged in the carriage of passengers by railroads, known to careful, diligent and skillful persons engaged in such business." We fully approved this charge, and announced that it was "the universal doctrince of the courts and text writers." We quoted very many authorities in support of it, and among them *L. & N. R. R. Co. v. Jones*, 83 Ala. 376, and *Ga. Pac. Rwy. Co. v. Love*, 91 Ala. 432. In Jones' case we held that a railroad company is liable for injuries done to a passenger, if diligence and a careful observance of duty could have prevented them. See also, *Leach v. Bush*, 57 Ala. 145, and *S. & N. R. R. Co. v. Bees*, 82 Ala. 340. So, in *Ala. Gr. So.*

*R. R. Co. v. Hill*, 93 Ala. 514, the doctrine of *Malette's case* was re-affirmed.

We adhere to the principle so often stated by this court, and hold, that only skillful and reasonably prudent persons should be placed in control of, or in responsible positions on trains which transport passengers for hire, and that the highest degree of care and diligence is exacted of them in the performance of their several duties and functions. The slightest negligence on their part causing injury to a passenger will render the railroad company liable.—*Grey v. Mobile Trade Co.*, 55 Ala. 387 ; *Tanner v. L. & N. R. R. Co.* 60 Ala. 621.

Is there a material difference between the rule we have declared and that announced in the charge we are criticising?

It is certainly true, as announced in the charge, that the dummy line would be liable, if the injury occurred in consequence of a failure of the agents, or any one of them, having charge of the train, to exercise the highest degree of care and diligence. That, we have seen, is the measure required; and anything short of it is negligence. If the charge had stopped there, it would have been free from error. But it did not stop there. It not only required that the agent in the discharge of his duties should exercise the highest degree of care, skill and diligence, but should exercise it as it should be suggested "by men of extraordinary care, skill and diligence," as expressed in one place; while in the other, the word "prudence" is substituted for the word diligence. Now, the agent in control of the train must necessarily act on his own judgment, prudence, skill and experience, in view of the attendant circumstances. He suggests his own action; and if he be required to exercise "the highest degree of care, skill and diligence" which would be suggested or exercised "by men of extraordinary care, skill and diligence," then he must necessarily be endowed with that "extraordinary care, skill and diligence," or "prudence," which the charge exacts. This would be to require a much higher standard of qualifications for employment on railroads, than the rule we have quoted and approved exacts. Extraordinary is a strong word. In the sense in which it is used it means "exceeding the common degree or measure; hence, remarkable; uncommon; rare; wonderful." It is a much stronger word than prudent, or ordinarily prudent; and if we approve this charge, do we not necessarily declare that only men of extraordinary care, skill and prudence are eligible to the positions of engineers and conductors on rail-

roads? This would be to establish a precedent, not only wrong in itself, but calculated to give us great trouble. This charge should not have been given.

Reversed and remanded.