# Southern Railway Co. *v.* Burgess.

## *Damages for Personal Injuries.*

1. *Negligence; pleading.*—When the *gravamen* of an action is the alleged non-feasance or misfeasance of a duty by another, it is, as a general rule, sufficient if the complaint avers facts showing the duty, and alleges that the defendant failed to do and perform it; it is not necessary to define the *quo modo*, or to specify the particular acts of diligence he should have employed in the performance of such duty.

2. *Same; common carriers; duty to passengers on freight trains.*— A common carrier of passengers owes to them the duty to exercise the highest degree of care, skill and diligence, known to very careful, skillful and diligent persons engaged in like business, and this, whether the passenger is upon a regular passenger train, or upon a freight train, upon which he is accepted as a passenger. But it is not required by law, that the carrier should use the care, skill and diligence, used by men of *extraordinary* care, skill and diligence.

3. *Same; same; same.*—A passenger must be carried to the end of the journey, for which he has contracted to be carried, and must be put down at the usual place of stopping. The carrier must stop their trains at such places long enough for passengers to alight in safety, and it is the correlative duty of the passenger to exercise due care and diligence in quitting the train. If, from circumstances, or the conduct of those in charge of the train, a passenger is reasonably induced to

[Southern Railway Co. v. Burgess.]

believe that the train has been halted that he may there alight, he is justified in treating the halting of the train as an invitation to alight. But the jury must pass upon the question, as to whether such facts and circumstances were such as to induce a reasonable person to believe that the train had halted for him to there alight.

4. *Same; same; contributory negligence; function of court and jury.*—Generally, whether due care and diligence have been observed is a mingled question of law and fact, and, in all cases of doubt, must be committed to the jury. When the facts are admitted or undisputed, or the rule of duty is fixed by law as the same under all similar circumstances, negligence is a question for the decision of the court; but, though the facts are undisputed, when negligence is a deduction to be drawn, and which may, or may not be drawn by men equally sensible and impartial, the question must be submitted to the jury.

5. *Pleading; practice.*—Where a plea sets up two or three matters in a conjunctive form, it is necessary, to entitle the defendant to a verdict thereon, that he shall reasonably satisfy the jury, by the evidence, that each and every matter set up in the plea is true.

6. *New trial; verdict contrary to evidence.*—The ruling of the lower court, in refusing a motion for a new trial on the ground that the verdict of the jury was contrary to the evidence, will not be disturbed by the appellate Court, unless the preponderance of the evidence was so decided against the verdict, as to convince the latter Court that it was wrong and unjust.

7. *Negligence; damages; excessive damages.*—Where, in an action for damages for negligence of the defendant, it appears that, by reason of the alleged negligence of the defendant, the plaintiff's arm was broken, that her hip was dislocated, and that the injury had caused pain and suffering, over a considerable time and to the time of trial, the Supreme Court will not affirm that an assessment of damages at $850.00 was excessive.

APPEAL from Circuit Court of Jefferson.

Tried before the Hon. A. A. COLEMAN.

This action was brought by the appellee, Cora Burgess, against the appellant, to recover damages for personal injuries alleged to have been sustained by her, while a passenger on a freight train of the defendant. The complaint, after alleging the relation of carrier and passenger, alleged that "The defendant so negligently conduct-

ed itself in and about said business, that, while plaintiff was engaged in or about disembarking from said train at North Birmingham, said train was struck, shaken or jolted, and plaintiff was thrown or caused to fall" &c. Demurrers of defendant are indicated by the opinion. These being overruled, the case was tried on pleas of the general issue, and contributory negligence.

The testimony, for the plaintiff, was to the effect that she took passage upon a freight train, operated by the defendant, occupying a caboose, which was attached thereto for carrying of passengers. That, on coming to North Birmingham, her destination, the train stopped, the engine being beyond the station, and the caboose about a hundred yards therefrom. The conductor and other passengers there left the caboose, and plaintiff's husband, looking out of the door for a minute, saw that the engine had been disconnected from the train. The plaintiff then arose from her seat, and began collecting certain parcels she had with her for the purpose of leaving the train, and, while so occupied, a jar or lurch was given, and thereby she was thrown off her balance and injured. There was testimony of her husband, as shown by the opinion, tending to show the custom of the defendant in stopping its freight train at such a point. The testimony of the conductor of the train was to the effect that it was the custom to draw the caboose of such train up to the station whenever lady passengers were aboard, and that, when he left the caboose, he announced that the caboose would shortly be taken to the station. The plaintiff testified that she heard no such announcement.

There being verdict and judgment for the plaintiff, the defendant moved that the same be set aside, and that a new trial be granted, which being overruled, it appealed. The purport of the charges given is sufficiently shown by the opinion.

JAMES WEATHERLY, for the appellant.

BOWMAN, HARSH & BEDDOW, for the appellee.

DENSON, J.—While the averment of negligence in the complaint is general, it is made with a sufficient degree of certainty under the liberal rules of pleading recognized by the Code, § 3285. As has been frequently said by this Court, "When the *aravamen* of the action is the alleged non-feasance or misfeasance of another, as a general rule it is sufficient if the complaint aver the facts out of which the duty to act springs, and the defendant negligently failed to do and perform. It is not necessary to define the *quo modo*, or to specify the particular acts of diligence he should have employed in the performance of such duty."—*Leach v. Bush*, 57 Ala. 145; *Mobile & Ohio R. R. Co. v. Williams*, 53 Ala. 595; *Mobile & Montgomery R. R. Co. v. Crenshaw*, 65 Ala. 566; *L. & N. R. R. Co. v. Jones*, 83 Ala. 376; *Armstrong v. Montgomery Street Ry. Co.*, 123 Ala. 233; *Central of Georgia Ry. Co. v. Foshee*, 125 Ala. 199; *Central of Ga. Ry. Co. v. Edmondson*, 135 Ala. 336.

Issue was joined and trial had on the general issue, and four special pleas, setting up contributory negligence on the part of the plaintiff. The trial resulted in a verdict and judgment for the plaintiff in the sum of $850.00.

The court, at the request of the plaintiff in writing, charged the jury that, "A common carrier of passengers owes to its passengers the duty to exercise the highest degree of care, skill and diligence, known to very careful, skillful and diligent persons engaged in like business."

There are two points made against this charge in the brief of counsel for appellant. The first point is, that the charge requires too high a degree of skill, care and diligence in the carriage of passengers on freight trains. The second point is, that the use of the word *very* seems to require a standard of extraordinary care.

"A railroad company may refuse to carry passengers on its freight trains, but if it admits a passenger into a caboose attached to one of its freight trains, to be transported as a passenger, it incurs the same liability for the safety of such person as though she had taken passage in one of its regular passenger coaches. It is neither expected nor required that a passenger upon a freight

train shall be provided with all the comforts and conveniences which are usually afforded passengers on a regular passenger train, but there is, on that account, no diminution in the obligation of those in charge of the freight train to convey its passengers with becoming and all necessary care, and to deliver them safely at or conveniently near their respective places of destination. It is the duty of a railroad company engaged in the transportation of passengers, whether by freight or passenger trains, to so run and manage its trains, and to so handle its passengers, that no one shall be injured by its own negligence."

Nothing ruled in the case of *Southern Ry. Co. v. Crowder,* 130 Ala. 256, is contrary to the doctrine above stated, but that case supports it.—2 Wood on Railway Law, 1121, *et seq*; Elliott on Railroads, 1629; *I. & St. R. Co. v. Hart,* 93 U. S. 291; *Ohio etc. Ry. Co. v. Shelby,* 17 Am. Rep. 719; *Ohio etc. Ry. Co. v. Dickerson,* 59 Ind. 317.

In *M. & E. Ry. Co. v. Mallett,* 92 Ala. 209, this Court, with respect to the degree of care and diligence required by those carrying passengers, laid down the rule, that, "The law requires the highest degree of care, diligence and skill, by those engaged in the carriage of passengers by railroads, known to careful, diligent and skillful persons engaged in such business." It is stated, by counsel for appellee in their brief, that charge number 2, the one under consideration, was extracted from the Mallett case.

If we except the word *very,* employed in the charge, the statement is supported by the case referred to.

In the case of *Gadsden & Attalla Union Railway Co. v. Causler,* 97 Ala. 235, the rule, as declared in the Mallett case, 92 Ala. 209, was fully approved and reaffirmed. In the Causler case, the court, at the request of counsel for the plaintiff, instructed the jury, "That the defendant is liable in damages to the plaintiff for any injury, resulting to plaintiff, that occurred because defendant's agents failed to take all such precautions to avoid the injury as would be suggested by the highest degree of care, skill and diligence by men of extraordinary care,

skill and diligence in carrying passengers by dummy line railway." The instruction was condemned for using the word *extraordinary*. The Causler case is cited and relied upon, in appellant's brief, as authority in support of his second point of attack, made against the charge.

The Court in that case, speaking through STONE, C. J., in commenting on the word "extraordinary," said: "Extraordinary is a strong word. In the sense in which it is used it means 'Exceeding the common degree or measure; hence, remarkable; uncommon; rare; wonderful.' It is a much stronger word than prudent, or ordinarily prudent; and, if we approve this charge, do we not necessarily declare that only men of extraordinary care, skill and prudence are eligible to the positions of engineers and conductors of railroads?" While we think the charge was properly condemned for the use of the word extraordinary, we do not think it can by fair interpretation be held that the Court intended in the Causler case to modify what was said in the cases of *Grey v. Mobile Trade Co.*, 55 Ala. 387, and *Tanner v. L. & N. R. R. Co.*, 60 Ala. 621, with reference to the degree of care, skill and diligence required of common carriers. In the Grey case, *supra*, the Court, speaking through Judge STONE, said, "A common carrier, who employs steam as his motive power, must bring to the service that degree of diligence which very careful and prudent men take of their own affairs. In this we but affirm that only very careful and prudent men should be placed in charge of such vehicles of transportation." In that case the Court was speaking of carriers of merchandise, and in the Tanner case, *supra*, after quoting the above extract from the Grey case, the Court, speaking through the same learned judge, referring to the Grey case, said, "In the language quoted, we were speaking of the care and diligence required in the transportation of merchandise. For a much stronger reason, should the rule be observed in carrying passengers, because human life is by far the most cherished and valuable of human endowments and possessions." In the Causler case, on page 239, the Grey and Tanner cases are referred to and approved. The word "very" in com-

24s

mon parlance, has not the same meaning as "extraordinary," and used in the charge in the connection it was, it does not express that superlative degree of diligence or care that would follow the use of the word "extraordinary." In the connection the word was used, it meant that servants of carriers of passengers must be persons who are careful in a high degree—to no small extent,—and this we understand is the requirement of the law. Neither do we think that in the use of the word "very" the charge transcended the degree of diligence required of carriers of passengers. Therefore, the court committed no error in giving it.—*Grey's Executor v. Mobile Trade Co.*, 55 Ala. 387; *Tanner's Executor v. L. & N. R. R. Co.*, 60 Ala. 621; *Maverick v. Eighth Ave. R. Co.*, 36 N. Y. 378; *Deys v. N. Y. Cent. R. R. Co.*, 9; *Treadwell v. Whittier*, 5 L. R. A. 498; *El Paso Electric Ry. Co. v. Harry*, 83 S. W. Rep. 735; *Conteras v. San Antonio Traction Co.*, 83 S. W. Rep. 870.

A charge, similar to charge 4 given for the plaintiff, was approved in the case of *Frazier v. A. G. S. R. R. Co.*, 93 Ala. 45, and there was no error in giving it.

The giving of charge 1 and 3 in plaintiff's series has been assigned as error, but there is no insistence on the assignment in the brief of counsel for appellant, and we pass them without consideration.

"The passenger is entitled, not only to be properly carried, but he must be carried to the end of the journey for which he has contracted to be carried, and must be put down at the usual place of stopping." That the point where the caboose was stopped was not the place where passengers usually alighted from passenger trains is not in controversy. And it is insisted by the plaintiff, that it was the habit of the defendant to allow passengers to alight where the caboose stopped, and the caboose was not usually carried to the platform for passengers to alight. The plaintiff's husband, who was a passenger on the train, and with whom plaintiff was traveling, testified that he had frequently been a passenger on defendant's freight trains that carried passengers; that the train he and his wife were on was a local freight, and

that it usually carried passengers. That the freights carrying passengers did not generally pull the caboose to the depot, to allow passengers to alight; that they didn't for him; that he and his wife walked back a hundred yards at the flag station where they got on the train that day. That the engine would generally stop near the depot, or, if they had freight, the train would generally pull to where they had freight to unload, and stop. That he had lived on the line of defendant's road fifteen years, "Off and on;" that, during that time, he had observed defendant's habit in reference to stopping freight trains, where they carried passengers, and they did not put the caboose up to the depot to put passengers off.

If a passenger is reasonably induced to believe, from the circumstances, or from the conduct of those in the management of the train, that it has been halted in order that the passengers may there alight, the passenger would be justified in treating such halting of the train as an invitation to alight at the point where the train was halted.—Hutchinson on Carriers, § 615.

It was insisted by the defendant that, if it be conceded that the plaintiff was justified in attempting to alight from the train at the point where the caboose had stopped, yet she did not exercise due care and diligence in her efforts to quit the train before the coupling was made by which she was hurt. In other words, that the train had stopped a reasonable length of time within which plaintiff, by the exercise of due care and diligence, could have left the train.

It is undoubtedly the duty of carriers to stop their trains at stations long enough for passengers to alight in safety, and it is the correlative duty of the passengers to exercise due care and due diligence in quitting the train.—*Birmingham Union Ry. Co. v. Smith,* 90 Ala. 60; *Alabama M. Ry. Co. v. Johnson,* 123 Ala. 197.

Whether or not, under the evidence and circumstances in the case, the plaintiff was justified in assuming that the place where the caboose stopped was the place where the defendant's servants expected that she would alight, was a question for the jury. We think, too, that the question, as to whether plaintiff acted with due care and

diligence in her preparations for quitting the train, could not have properly been decided as matter of law by the court. "Generally, whether due care and diligence have been observed, is a mingled question of law and fact, and in all cases of doubt, must be committed to the jury. When the facts are admitted, or undisputed, and the inferences from them are undisputable, or the rule of duty is fixed by law as the same under all similar circumstances, negligence is a question for the decision of the court, but, though the facts are undisputed, when negligence is a deduction to be drawn, and which may or may not be drawn by men equally sensible and impartial, the question must be submitted to the jury."—*Houston's case,* 83 Ala. 361; *A. G. S. R. R. Co. v. Jones,* 71 Ala. 487.

If plaintiff was, under the evidence, warranted in assuming that the place where the caboose stopped, was the place at which she was expected by the carrier's servants to alight and if she, acting in good faith upon such assumption, after the train stopped, with due care and diligence was preparing to get off the train and, while so preparing to get off, was placed in peril from the further movement of the train, the duty of the carrier was to stop the train long enough for her to get off in safety, or to warn her of the danger in time to avert injury; and it could not, in such case, be material, whether the shock, or movement of the train producing the injury, was an incident of the ordinary operation of the trains or was extraordinary, and unnecessarily violent.—*Alabama Midland Railway Co. v. Horn,* 132 Ala. 407; *Southern Railway v. Roebuck,* 132 Ala. 412.

The affirmative charge requested by defendant was properly refused. Charge 4, requested by the defendant, pretermitted any inquiry as to knowledge on the part of plaintiff as to whether the caboose would be drawn up nearly opposite the depot, and was properly refused.

The remaining assignments of error relate to the decision of the court, overruling the motion for a new trial. One of the grounds alleged in the motion was that the verdict was contrary to the evidence. In considering the motion, we must be mindful of the issues made by the

pleas of contributory negligence. There were four pleas setting up contributory negligence. The first, No. 2, is to the effect that plaintiff negligently put herself in an improper position on the car, and, as a proximate result, was injured; this plea sets up a single cause or ground upon which contributory negligence was predicated. If proved, it would have entitled the defendant to a recovery. Whether or not plaintiff placed herself in an improper position was submitted to the jury, and, under the evidence, we cannot affirm that the finding, when referred to that plea, was wrong and unjust. The same may be said with respect to plea number 3.

It cannot be seriously contended that a new trial should be granted on the issue, as made by plea number 4. The evidence of the defendant's witnesses is widely variant as to what was said by the conductor, as he passed through the caboose, to passengers about the place where they would get off. While the evidence for the plaintiff on the subject tended to show, that the conductor made no statement or remark whatever. Plea 5 alleged that plaintiff negligently attempted to leave the car, in an improper manner and at an improper time and place, and, as a proximate result thereof, was injured. It will be observed that this is what may be termed a compound plea; two or three matters of defense are set up in the conjunctive form. It is settled law that, under such plea, to entitle the defendant to a verdict on the plea, it was devolved upon the defendant to reasonably satisfy the jury that the plaintiff attempted to leave the car, not only in an improper manner, or at an improper time and place, but in the language of the plea, "In an improper manner and at an improper time and place."— *Bienville Water Supply Co. v. The City of Mobile,* 125 Ala. 178; *King v. The Peoples Bank,* 127 Ala. 266; *Southern Ry. Co. v. Howell,* 135 Ala. 639.

We have discussed the question of *place* in another part of this opinion, and will not repeat what was there said, except to say, that, under the evidence, the jury was authorized in concluding that the plaintiff was warranted in assuming that the halting of the train, where it did, was an invitation for passengers to alight, and,

while there was evidence opposed to this right of assumption, the preponderance of the evidence was not so decided against the verdict, as to convince us that it was wrong and unjust.—*Cobb v. Malone*, 92 Ala. 630.

Next it was insisted that the verdict for $850.00 was excessive. Evidence for plaintiff tended to show that her arm was fractured, and that it caused her great pain and suffering, and that the pain and suffering extended over a considerable period of time, and that it had continued periodically to pain her up to the time of the trial. It was also testified by the plaintiff that one of her hips was dislocated. We do not feel that we would be justified in affirming that the damages assessed were excessive. We have considered all the assignments of error that have been insisted upon, and, having found no error in the record, the judgment is

Affirmed.

McCLELLAN, C. J., HARALSON and DOWDELL, J.J., concurring.